139 P.3d 712

**Aha Hui Malama O KANIAKAPUPU,
Appellant–Appellant,**

v.

**LAND USE COMMISSION, State of Hawai'i; Elizabeth Midkiff Myers fka Elizabeth Midkiff Morriss; and Office of Planning, Appellees–Appellees,**

and

**Robert H. Midkiff; Joan H. Shigekane, as Trustee of the Joanne H. Shigekane Revocable Living Trust, Appellees.**

No. 26984.

Supreme Court of Hawai'i.

July 24, 2006.

Gerard A. Jervis and Lissa D. Shults, Honolulu, (and Michael R. Cruise, Wailuku, with them on the reply briefs), on the briefs, for appellant-appellant.

Diane Erickson and Russell A. Suzuki, Deputy Attorneys General, on the briefs, for appellee-appellee Land Use Comm'n, State of Hawai'i.

Deborah Day Emerson and John W.K. Chang, Deputy Attorneys General, on the briefs, for appellee-appellee Office of Planning.

Donna Y.L. Leong and Stacey Kawasaki Djou, Honolulu, (of Cades Schutte LLP), on the briefs, for appellee-appellee Elizabeth Midkiff Myers.

MOON, C.J., LEVINSON, and NAKAYAMA, JJ.; ACOBA, J., Dissenting, with whom DUFFY, J., joins.

Opinion of the Court by MOON, C.J.

In this secondary appeal, appellant-appellant Aha Hui Malama O Kaniakapupu (the Hui) appeals from the Circuit Court of the First Circuit's November 5, 2004 judgment[1] in favor of appellees-appellees State of Hawai'i (State) Land Use Commission (LUC), Elizabeth Midkiff Myers fka Elizabeth M. Morris (Myers), Robert R. Midkiff, Joanne H. Shigekane as trustee of the Joanne H. Shigekane Revocable Living Trust, and State Office of Planning [hereinafter, collectively, Appellees]. Therein, the circuit court dismissed the Hui's agency appeal from the LUC's March 25, 2004 order that denied the Hui's motion for an order to show cause, based on lack of subject matter jurisdiction. In upholding the LUC's determination, the circuit court concluded that, inasmuch as Hawai'i Revised Statutes (HRS) § 91–14(a) (1993), quoted *infra*, requires that a contested case occur before appellate jurisdiction may be exercised and a contested case hearing did not occur in the instant case, the Hui could not seek judicial review of the LUC's decision.

On appeal, the Hui essentially claims that the circuit court erred in dismissing its agency appeal for lack of subject matter jurisdiction. For the reasons discussed below, we hold that the Hui's contention lacks merit inasmuch as a contested case hearing did not occur in the instant case, thereby precluding judicial review pursuant to HRS § 91–14(a). Accordingly, we affirm the circuit court's November 5, 2004 judgment.

## I. BACKGROUND

### A. Factual Background

On February 1, 1989, the Henry H. Shigekane Revocable Living Trust and the Joanne H. Shigekane Revocable Living Trust

---

1. The Honorable Eden Elizabeth Hifo presided over the underlying proceedings.

[hereinafter, collectively, the Shigekanes], Midkiff, and Myers petitioned the LUC to amend the land use district boundary for approximately 9.917 acres situated in an area known as Nuʻuanu, in Honolulu, Hawaiʻi (the 1989 boundary amendment petition). The Shigekanes, Midkiff, and Myers sought to amend the land use district boundary from "Conservation Land Use District Boundary" (conservation district) to "Urban Land Use District Boundary" (urban district). The approximately 9.917 acres consist of two adjoining homesteads assigned tax map key (TMK) numbers: (1) 2-2-55:02; and (2) 2-2-55:04. TMK # 2-2-55:02 is owned by the Shigekanes and their family (the Shigekane Parcel).[2] Midkiff and Myers, who are brother and sister, each hold an undivided one-half interest in TMK # 2-2-55:04 (the Midkiff/Myers Parcel) [hereinafter, the Shigekane Parcel and the Midkiff/Myers Parcel are collectively referred to as the Property]. The Shigekane Parcel consists of approximately 5.104 acres, and the Midkiff/Myers Parcel consists of the remaining 4.813 acres.

Reclassification of the Property was sought to enable the Shigekanes, Midkiff, and Myers "to subdivide the Property, construct both replacement and new houses on the Property, and make such other repair and improvements of the existing units in a manner ordinarily and customarily allowed for urban residential uses and thereby provide house lots or homes for their children." The LUC conducted a hearing on the 1989 boundary amendment petition on July 27, and 28, 1989.

On November 9, 1989, the LUC entered its findings of fact (FOFs), conclusions of law (COLs), decision, and order, approving the reclassification of the Property from conservation district to urban district (the November 1989 order). The LUC found that,

[i]n order to provide reasonable assurance to the [LUC] that the proposed development is a family enterprise to provide housing for the family members and not a commercial enterprise for speculation, [the Shigekanes, Midkiff, and Myers] have represented that they are willing to be subjected to a condition that members of the famil[ies] of [the Shigekanes, Midkiff, and Myers], respectively, would have a right of first refusal to purchase if any interest in the Property were sought to be sold.

Indeed, the LUC imposed the following relevant conditions on Midkiff and Myers:

4. That [Midkiff and Myers] shall agree to a covenant, said covenant to run with the land and in a form agreeable to the Office of State Planning that, with respect to the Midkiff/Myers [P]arcel (TMK: 2-2-55:04), for a period of 20 years after the date of this [o]rder, if [Midkiff] or [Myers] desires to sell or convey all or portions of their ownership interest in said parcel, *he or she shall first offer such interest each to the other or in the alternate convey such interest to any of his or her children, as the case may be;* and if any of the children so acquiring said interest desires to sell or convey all or portion[s] of their interest in said parcel, they shall first offer such interest in the parcel to their siblings and/or [Midkiff] and [Myers], as the case may be, however, provided that the holder of interest in the Midkiff/Myers [P]arcel may mortgage the interest at any time.[3]

. . . .

8. [The Shigekanes, Midkiff, and Myers] shall develop the Property in substantial compliance with representations made to the [LUC] in obtaining the reclassification of the Property.

(Emphasis added.)

Sometime in 2000—approximately eleven years after the November 1989 order—the Hui was formed in order to "care for and serve as a steward of Kaniakapupu, the historic ruins of the royal summer cottage of Kamehameha III." Kaniakapupu is located on property owned by the State that shares a common boundary with, and is situated ap-

---

2. Inasmuch as the Shigekanes were excused from the LUC proceeding underlying the instant secondary appeal and there were no objections from any of the parties, the Shigekane Parcel is not at issue in this case. The Shigekanes filed a statement of nonparticipation with the circuit court on May 5, 2004.

3. A similar condition was also imposed on the Shigekanes with respect to the Shigekane Parcel.

proximately 200 to 300 feet from, the Midkiff/Myers Parcel.

On August 21, 2002, Myers listed 2.32 acres of the Midkiff/Myers Parcel for sale to the public with the Multiple Listing Service (MLS) for $12,000,000. On January 20, 2003, Myers listed an additional 20,001 square feet of the Midkiff/Myers Parcel for sale to the public with the MLS.

### B. *Procedural History*

#### 1. The LUC Proceeding

On April 21, 2003, the Hui filed a "Motion for an Order to Show Cause Regarding Enforcement of Conditions, Representations, or Commitments" (motion for an order to show cause) pursuant to Hawai'i Administrative Rules (HAR) §§ 15–15–70[4] and 15–15–93.[5] The Hui sought to have the LUC issue an order to show cause as to why the classification of the Midkiff/Myers Parcel should not be reverted to conservation district. Generally, the Hui contended that Myers failed to perform her representations and commitments and the conditions of the November 1989 order by listing portions of the Midkiff/Myers Parcel for sale to the public with the MLS. The Hui apparently believed that Myers violated Condition No. 4 of the November 1989 order. In addition, the Hui alleged that Midkiff and Myers "represented and made commitments that their property was not going to be used for commercial venture, but rather[,] they sought reclassification for 'family use purposes[.]' " Furthermore, the Hui expressed concerns that selling portions of the Midkiff/Myers Parcel "will result in the influx of many new people to the Kaniakapupu site and further endanger the preservation efforts carried out to date." The Hui requested a hearing on its motion for an order to show cause pursuant to HAR § 15–15–70(c).

In a facsimile dated April 24, 2003 and sent on April 28, 2003 from Myers to her listing agent, Myers withdrew her listings with the MLS. On January 7, 2004, Myers submitted her memorandum in opposition to the Hui's motion for an order to show cause, which Midkiff joined on the same day. Myers stated that she had complied with Condition No. 4 by first offering the MLS-listed portion of the Midkiff/Myers Parcel to Midkiff. Moreover, Myers contended that, inasmuch as the purpose of the instant proceeding was to consider the Hui's motion for an order to show cause, "[a]ny evidence or issues presented to the [LUC] about Kaniakapupu ... is irrelevant to the purpose of [the] proceeding."

---

**4.** HAR § 15–15–70, entitled "Motions," provides in pertinent part:

 (a) Any party may make motions before, during, or after the close of a hearing.
 (b) All motions, other than those made during a hearing, shall:
 (1) Be in writing;
 (2) State the grounds for the motion;
 (3) Set forth the relief or order sought; and
 (4) Be accompanied by a memorandum in support of the motion, if the motion involves a question of law.
 (c) Every motion, except one entitled to be heard *ex parte*, shall indicate whether a hearing is requested on the motion. If a motion requires the consideration of facts not appearing of record, it shall be supported by an affidavit or affidavits.
 . . . .
 (i) If a hearing is requested, the executive officer shall set a date and time for hearing on the motion.
 (j) If a hearing on the motion is not requested, the [LUC] may decide the matter upon the pleadings, memoranda, and other documents filed with the [LUC].

**5.** HAR § 15–15–93, entitled "Enforcement of conditions, representations, or commitments," provides in relevant part:

 (a) Any party or interested person may file a motion with the [LUC] requesting an issuance of an order to show cause upon a showing that there has been a failure to perform a condition, representation, or commitment on the part of the petitioner. The party or person shall also serve a copy of the motion for an order to show cause upon any person bound by the condition, representation, or commitment. The motion for an order to show cause shall state:
 (1) The interest of the movant;
 (2) The reasons for filing the motion;
 (3) A description and a map of the property affected by the condition;
 (4) The condition ordered by the [LUC] which has not been performed or satisfied;
 (5) Concisely and with particularity the facts, supported by an affidavit, giving rise to a belief that a condition ordered by the [LUC] has not been performed or satisfied; and
 (6) The specific relief requested.

The LUC held a hearing on the Hui's motion for an order to show cause on January 15, 2004 (the January 2004 hearing). At the conclusion of the January 2004 hearing, the LUC orally voted to deny the Hui's motion on the basis that the Hui had not met its burden of demonstrating a failure to perform a condition, representation, or commitment on the part of Myers. On March 25, 2004, the LUC entered its written order denying the Hui's motion for an order to show cause. The LUC summarized the arguments advanced by the Hui and Myers as follows:

> [The Hui] argued that an [o]rder to [s]how [c]ause should be issued because Midkiff/Myers failed to comply with representations and commitments made to the [LUC] during the original proceedings [*i.e.*, the proceedings relating to the 1989 boundary amendment petition]. It argued that the [LUC] granted a "conditional" reclassification of the [Property] from the [c]onservation [d]istrict to the [u]rban [d]istrict because [Midkiff and Myers] represented that they were seeking the reclassification for continued family residential use through existing and new structures. [The Hui] further argued that the listing of the Midkiff/Myers [P]arcel[ ] for sale showed that Midkiff/Myers had failed the commitment to keep the [Midkiff/Myers Parcel] in family residential use. The remedy that [the Hui] seeks is the reversion of the Midkiff/Myers [Parcel] of the [Property] from the [u]rban [d]istrict to the [c]onservation [d]istrict.

> [The Hui] acknowledged that Condition No[ ]. 4 ... of the [November 1989 order] restricted the sale of the [Midkiff/Myers Parcel] for twenty (20) years from the issuance of the [November 1989 order], unless a right of first refusal amongst [Midkiff/Myers] and their successor are offered prior to any sale of the [P]roperty outside the families.

> . . . .

> [The Hui] acknowledged that Midkiff/Myers complied with the right of first

refusal requirements, but it argued that despite the compliance of Midkiff/Myers with this requirement, they failed in their representations to the [LUC] by listing the [Midkiff/Myers Parcel] for sale pursuant to Condition No. 8[,6]

> . . . .

> Midkiff/Myers ... opposed the [Hui's motion for an order to show cause] on the following bas[e]s: (1) [the Hui] does not have standing to file the [motion for an order to show cause] because it is not an adjacent landowner; (2) [the Hui] has not alleged any injury; and (3) the [LUC's] jurisdiction is in the [area of the Property] and not off-site at Kaniakapupu.... Also, Midkiff/Myers stated that [they] withdrew the listing[.]

The LUC then stated:

> The [LUC] discussed the various interpretations of compliance with Condition No. 4[ ] and concluded that the intent of the condition was to enforce the representations of [Midkiff and Myers] to keep the [Midkiff/Myers Parcel] for family use purposes. It determined that the offer of first refusal requirement was satisfied, but it raised the concerns that the $12,000,000 listed sales price in relation to current infrastructure costs and tax assessment of the [Midkiff/Myers Parcel] called into question the sincerity of the offer and refusal on the sales price between Myers and Midkiff; and if the [Midkiff/Myers Parcel] were sold for near the list price the significant financial gain would be contrary to [Midkiff's and Myers'] representations.

> . . . .

> Through the evidence and arguments provided by [the Hui] and the parties, the [LUC] was concerned that the [Hui] did not meet its burden[ ] in demonstrating that Midkiff/Myers had not satisfied Condition Nos. 4 and 8. The [LUC] acknowledged that the [m]otion [for an order to show cause] was not ripe because of the withdrawal of the Midkiff/Myers [P]arcel from the listing.

6. As previously indicated, Condition No. 8 provided that the Shigekanes, Midkiff, and Myers "shall develop the Property in substantial compliance with representations made to the [LUC] in obtaining the reclassification of the Property."

Finally, the LUC stated that it was denying the Hui's motion for an order to show cause pursuant to HAR § 15–15–93, *see supra* note 5.

### 2. Appeal to the Circuit Court

On February 12, 2004, before the LUC entered its written order denying the Hui's motion for an order to show cause, the Hui filed a notice of appeal with the circuit court. On March 29, 2004, the circuit court dismissed the appeal for non-compliance with Hawai'i Rules of Civil Procedure (HRCP) Rule 72 (2004) (relating to appeals to a circuit court) inasmuch as the Hui failed to timely file the designation of the record on appeal and the statement of the case. On April 5, 2004, the Hui filed another notice of appeal with the circuit court pursuant to HRS §§ 91–14,[7] 205–4 (2001),[8] HAR § 15–15–93, and HRCP Rule 72. On April 27, 2004, the circuit court entered an order withdrawing its notice of dismissal of the Hui's appeal.

On July 21, 2004, the Hui filed its opening brief with the circuit court. The Hui contended that it had standing to bring the appeal inasmuch as "the rights of native Hawaiians are a matter of great public concern in Hawai'i." Specifically, the Hui argued that development of the Midkiff/Myers Parcel would endanger Kaniakapupu and ancient burial mounds that lie across a stream to the south of the Midkiff/Myers Parcel. The Hui

also contended that the LUC erred in concluding that its motion for an order to show cause was not ripe because (1) the doctrines of ripeness and mootness apply only to Article III courts and not to state courts or administrative agencies and (2) Myers "definitely and concretely intend[ed] to place her property on the market." In addition, the Hui argued that the LUC erred in concluding that it did not meet its burden of demonstrating that Myers failed to perform a condition, representation, or commitment. The Hui contended that it "presented more than sufficient facts to give rise to a reason to believe that [Myers] ha[d] failed to perform a condition, representation, or commitment."

On August 30, 2004, the LUC filed its answering brief with the circuit court in which the Office of Planning joined on the same day. The LUC argued that the circuit court lacked subject matter jurisdiction to entertain the Hui's appeal inasmuch as the Hui was not "aggrieved by a final decision and order in a contested case" as required by HRS § 91–14. Specifically, the LUC contended that the Hui was not an "aggrieved person" because: (1) the Hui was not a party to the proceeding that resulted in the November 1989 order; (2) the proceeding that considered the Hui's motion for an order to show cause was not a "contested case" as defined in HRS § 91–14; and (3) the Hui did not have standing to prosecute the motion for an order to show cause. The LUC further

---

7. HRS § 91–14, entitled "Judicial review of contested cases," provides in relevant part:

(a) *Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter;* but nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial *de novo*, including the right of trial by jury, provided by law. Notwithstanding any other provision of this chapter to the contrary, for the purposes of this section, the term "person aggrieved" shall include an agency that is a party to a contested case proceeding before that agency or another agency.
(Emphasis added.)

8. HRS § 205–4, entitled "Amendments to district boundaries involving land areas greater than fifteen acres," provides in relevant part:

(a) Any department or agency of the State, any department or agency of the county in which the land is situated, or any person with a property interest in the land sought to be reclassified, may petition the [LUC] for a change in the boundary of a district....

. . . .

(i) Parties to proceedings to amend land use district boundaries may obtain judicial review thereof in the manner set forth in section 91–14, provided that the court may also reverse or modify a finding of the [LUC] if such finding appears to be contrary to the clear preponderance of the evidence.

At the circuit court level, the Hui maintained that its motion for an order to show cause constitutes a "petition for reclassification," *i.e.*, a petition for boundary amendment. However, the Hui now concedes that its motion for an order to show cause "is not a petition for boundary amendment." As such, the Hui could not file its notice of appeal pursuant to HRS § 205–4.

contended that, even assuming *arguendo* that the instant case is a contested case, the Hui's motion for an order to show cause is moot because "the record shows that Myers complied with the requirements of Condition [No.] 4 prior to listing" the property at issue. According to the LUC, "[t]here is in the record an offer to sell the property to ... Midkiff and his refusal to buy it." As such, the LUC maintained that it did not have reason to believe that there had been a failure to perform a condition, representation, or commitment on the part of Myers. Finally, the LUC argued that the Hui's native Hawaiian practices and rights are not implicated because

> the record is bare of any evidence that Midkiff/[Myers] through the actions of Myers have prevented [the Hui] from exercising customary rights over the property that is subject to the LUC's jurisdiction, *i.e.*, the Shigekane [Parcel] and [the Midkiff/Myers Parcel]. The LUC has no jurisdiction over Kaniakapupu because it is State land that is within the conservation district and is not the subject of a past or pending land use proceeding under HRS chapter 205. Jurisdiction over conservation district lands are within the purview of the Department of Land and Natural Resources. Furthermore, [the Hui's] action is not in the nature of a boundary reclassification petition. [*See supra* note 8]. The LUC's obligation to consider Native Hawaiian rights is in petitions for boundary amendments. Thus, [the Hui's] attempt to inject a Native Hawaiian rights issue into this proceeding is inappropriate.

Myers filed her answering brief with the circuit court on August 30, 2004, which Midkiff joined on September 2, 2004. Myers contended that the appeal should be dismissed because: (1) the circuit court lacked subject matter jurisdiction; (2) the Hui lacked standing; and/or (3) the Hui failed to meet its burden of making a showing that the LUC's valid decision to deny the Hui's motion for an order to show cause was clearly erroneous. Specifically, Myers argued that the circuit court lacked subject matter jurisdiction inasmuch as there was no contested case hearing from which an appeal could be taken. Moreover, Myers contended that the Hui

> misinterpreted Condition No. 4, stating that Condition No. 4 does not prohibit [her] from listing her [property] for $12,000,000. In fact, nothing in Condition [No.] 4 prevents the sale of the Midkiff/Myers Parcel. Condition [No.] 4 only requires that Midkiff and Myers agree to offer their interest in the property to each other if either desires to sell all or a portion of the property within 20 years of the [November 1989 order].

On September 9, 2004, the Hui filed its reply brief with the circuit court. The Hui contended that the circuit court did not lack subject matter jurisdiction inasmuch as the January 2004 hearing was a contested case hearing.

On September 22, 2004, the circuit court heard oral argument on the Hui's appeal at which time the parties essentially reiterated the arguments made in their briefings to the circuit court. At the conclusion of the parties' arguments, the circuit court stated:

> I need to look more closely again at the single issue that was in my mind before I came in and that is whether on the motion for the [order to show cause] that is a required contested case hearing, and I definitely agree that it is not required to be a contested case hearing unless that is to say by statute or rule and, therefore, the only basis for it having to be [a] contested case is the constitutional rights which [the Hui's counsel] has argued. And so I need to think about that a bit more.

The circuit court, therefore, requested additional briefing on the issue whether there was a constitutional right to a due process hearing on the Hui's motion for an order to show cause.

On October 6, 2004, the LUC filed its supplemental memorandum, joined in by the Office of Planning, as requested by the circuit court. The LUC argued that the issue before the circuit court "does not involve the exercise of traditional or customary rights by native Hawaiians on land that is subject to the jurisdiction of the LUC." Rather, the LUC maintained that the "only matter before [the circuit] court is the LUC's ruling

that it did not believe there was sufficient information to justify the issuance of an order to show cause that a violation of conditions or representations in the original 1989 proceeding had occurred justifying a reversion of the land (the Midkiff/Myers and Shigekane Parcels) to the prior conservation classification."

Also on October 6, 2004, the Hui filed its supplemental memorandum as requested by the circuit court. The Hui argued that it "voice[d] its concerns regarding the effects of [Myers'] failure to perform a condition, representation, or commitment relat[ing] to the [November 1989 order] grant[ing] her petition for reclassification on native Hawaiian's constitutionally-protected customary and traditional rights[ ] practiced on the property abutting [Myers'] property."

Also on the same day, Myers filed her supplemental memorandum as requested by the circuit court.[9] Myers maintained that "[a] contested case hearing ... is only constitutionally required if there may be a 'governmental deprivation of a specific property interest.'" Myers argued that the Hui "is not threatened with any governmental deprivation of any specific benefit that it already possesses. In fact, at oral argument, [the Hui] claimed that the 'governmental deprivation' at issue was the threat to Myers of reclassification of her land from urban to conservation. [The Hui,] however, cannot assert an alleged deprivation of Myers' interests." Moreover, Myers contended that the fact "[t]hat an individual or group has standing as an aggrieved party under HRS § 91–14 does not mean that he, she, or it has a property interest under the due process clause of the [c]onstitution." Stated differently, Myers essentially contended that the Hui was impermissibly equating "standing" with "a property interest under the due process clause of the constitution."

On November 5, 2004, the circuit court entered its order dismissing the Hui's appeal for lack of subject matter jurisdiction. The circuit court stated:

The [c]ourt finds that the [LUC] did not hold a contested case hearing. The hearing that was held was an agency hearing consistent with [HAR] § 15–15–70 governing motions practice and does not mean that a motion filed pursuant to [HAR] § 15–15–93(a) by [the Hui] as an "interested party" or by any party requesting an order to show cause is a contested case hearing. If the motion for an order to show cause had been granted, then a contested case hearing would have been required. The court rejects [the Hui's] attempt to characterize the motion for an order to show cause as a petition for boundary amendment or the equivalent of a petition for boundary amendment, requiring a contested case hearing. [See supra note 8].

The court concludes that the requirement in [HRS] § 91–14 that the order appealed from arise from a contested case hearing, has not been met. As such, this court lacks jurisdiction to reach the issue of whether a contested case hearing was required. See Pele Defense Fund v. Puna Geothermal Venture, 77 Hawai'i 64, 69 n. 10, 881 P.2d 1210, 1215 n. 10 (1994). This court can only dismiss the appeal and therefore does so.

Also on November 5, 2004, the circuit court entered final judgment in favor of Appellees. The Hui timely appealed to this court on December 3, 2004.

## II. STANDARD OF REVIEW

■ "The existence of subject matter jurisdiction is a question of law that is reviewable *de novo* under the right/wrong standard." *Aames Funding Corp. v. Mores,* 107 Hawai'i 95, 98, 110 P.3d 1042, 1045 (2005) (internal quotation marks, brackets, and citations omitted). "If a court lacks jurisdiction over the subject matter of a proceeding, any judgment rendered in that proceeding is invalid. Therefore, such a question is valid at any stage of the case, and though a [circuit] court is found to have lacked jurisdiction, we have jurisdiction here on appeal, not of the merits, but for the purpose of correcting an error in jurisdiction." *Bush v. Hawaiian Homes Comm'n,* 76 Hawai'i 128, 133, 870

9. The record does not indicate that Midkiff joined in Myers' supplemental memorandum.

P.2d 1272, 1277 (1994) (internal quotation marks, brackets, and citation omitted).

## III. *DISCUSSION*

### A. *Subject Matter Jurisdiction*

■ The Hui contends that the circuit court erred in concluding that the January 2004 hearing was not a contested case hearing. The Hui argues that the January 2004 hearing met all the requisite elements in order to constitute a contested case hearing pursuant to HRS § 91–14, and, thus, the Hui was entitled to judicial review of the LUC's decision denying the Hui's motion for an order to show cause. Myers contends that the circuit court correctly determined that it lacked subject matter jurisdiction.[10] Myers argues that the January 2004 hearing did not constitute a contested case and that, therefore, the Hui has no right to judicial review. Similarly, the LUC contends that its order "denying [the Hui's] motion for an order to show cause was not a final decision and order in a 'contested case' as required by HRS § 91–14." [11]

■ "HRS § 91–14(a) provides the means by which judicial review of administrative contested cases can be obtained. Among its prerequisites, the section requires that a contested case must have occurred before appellate jurisdiction may be exercised." *Pele Defense Fund v. Puna Geothermal Venture,* 77 Hawai'i 64, 67, 881 P.2d 1210, 1213 (1994) (citation omitted). HRS § 91–1(5) (1993) defines a "contested case" as "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing." HRS § 91–1(6) (1993), in turn, defines an "agency hearing" as "such hearing held by an agency immediately prior to a judicial review of a contested case as provided in section 91–14." Thus, "[a] contested case is an agency hearing that 1) is required by law *and* 2) determines the rights, duties,

or privileges of specific parties." *Pub. Access Shoreline Hawai'i v. Hawai'i County Planning Comm'n,* 79 Hawai'i 425, 431, 903 P.2d 1246, 1252 (1995) (internal quotation marks and citation omitted) (emphasis added) [hereinafter, *PASH* ].

#### 1. "Required by Law"

■ In order for an agency hearing to be "required by law," it may be required by (1) agency rule, (2) statute, or (3) constitutional due process. *Id.* Accordingly, we first address whether the January 2004 hearing was required by agency rule, statute, or constitutional due process.

The Hui contends that the January 2004 hearing was required by the HAR. Specifically, the Hui argues that HAR § 15–15–70 mandated the January 2004 hearing. Myers contends that HAR § 15–15–70 "does not authorize a contested case hearing on a motion for an order to show cause." Moreover, Myers argues that "[a] hearing is required only if the order to show cause is granted, *see* [HAR] § 15–15–93(c),[ [12]] but there is no statutory or administrative rule requiring a hearing on the motion for an issuance of an order to show cause."

This court has stated that, "[i]f the ... rule governing the activity in question does not *mandate* a hearing prior to the administrative agency's decision-making, the actions of the administrative agency are not 're-quired by law' and do not amount to a 'final decision or order in a contested case' from which a direct appeal to circuit court is possible." *Bush,* 76 Hawai'i at 134, 870 P.2d at 1278 (citations omitted) (emphasis in original). As previously stated, the Hui brought its motion for an order to show cause pursuant to, *inter alia,* HAR § 15–15–70. HAR § 15–15–70, dealing with motions in general, provides in relevant part:

(c) **Every motion,** except one entitled to be heard *ex parte,* **shall indicate whether a hearing is requested on the motion.** If

---

**10.** The record does not indicate that Midkiff filed an answering brief or joined in Myers' answering brief.

**11.** The Office of Planning filed a joinder in the LUC's answering brief on June 1, 2005.

**12.** HAR § 15–15–93(c) provides:

The [LUC] shall conduct a hearing on an order to show cause in accordance with the requirements of subchapter 7, where applicable. Any procedure in an order to show cause hearing may be modified or waived by stipulation of the parties and informal disposition may be made in any case by stipulation, agreed settlement, consent order, or default.

a motion requires the consideration of facts not appearing of record, it shall be supported by an affidavit or affidavits.

. . . .

**(i) If a hearing is requested, the executive officer shall set a date and time for hearing on the motion.**

(j) If a hearing on the motion is not requested, the [LUC] may decide the matter upon the pleadings, memoranda, and other documents filed with the [LUC].

(Bold emphases added.) HAR § 15–15–70(i) plainly states that, once a hearing is requested, the executive officer must set a date and time for the hearing on the motion. In other words, if a motion is accompanied by a request for a hearing, the LUC must conduct a hearing on the motion. Inasmuch as the LUC does *not* have any discretion to determine whether to hold a hearing once a hearing is requested and the Hui did request a hearing on its motion, the January 2004 hearing was required by HAR § 15–15–70. *Cf. Lingle v. Hawai'i Gov't Employees Ass'n, AFSCME, Local 152,* 107 Hawai'i 178, 184, 111 P.3d 587, 593 (2005) (stating that "discretionary hearings are not contested cases because they are not required by law"). Thus, the January 2004 hearing was "required by law." [13] However, as previously stated, to constitute a contested case, an agency hearing must be required by law *and* determine the rights, duties, or privileges of specific parties. *PASH,* 79 Hawai'i at 431, 903 P.2d at 1252. Accordingly, we next address whether the January 2004 hearing determined the rights, duties, or privileges of specific parties.[14]

## 2. Determination of the Rights, Duties, or Privileges of Specific Parties

█ The Hui contends that "the January 2004 hearing determined the rights, duties, and privileges of specific parties." (Capital letters altered.) Specifically, the Hui argues that the January 2004 hearing "determined

the Hui's members' right and privilege to protect their [n]ative Hawaiian cultural and traditional practices from the activities on [Midkiff's and Myers'] neighboring property, and their right and privilege to protect the historical ruins of Kaniakapupu." The Hui also argues that the January 2004 hearing determined [Midkiff's and Myers'] duty to use their property consistent with their representations and commitments made in 1989 with the conditions the LUC imposed on [Midkiff and Myers] in 1989." Furthermore, the Hui claims that the January 2004 hearing "determined [Midkiff's and Myers'] right to maintain their property as an [urban district], rather than having it revert to [conservation district.]" Myers contends that, "[c]ontrary to [the Hui's] bald assertion[,]" the January 2004 hearing did not determine the rights, duties, and privileges of specific parties. Instead, Myers asserts that "[a]t issue at the January [2004] hearing on [the Hui's motion for an order to show cause] was whether [the Hui] had met its burden of demonstrating that . . . [Myers] failed to perform a condition, representation, or commitment. Even if the [LUC] had found that [the Hui] had made a sufficient showing, the [LUC], at most, could have issued an order to show cause."

In the instant case, the subject matter of the January 2004 hearing was Myers' compliance or non-compliance with her representations or commitments made during the proceeding involving the 1989 boundary amendment petition and the conditions imposed by the November 1989 order. If the LUC had determined that it "ha[d] reason to believe that there had been a failure to perform according to the conditions imposed, or the representations and commitments made by [Myers]," then the LUC would have issued an "order to show cause why the property should not revert to its former land use classification or be changed to a more appropriate classification[ ]" to Myers. HAR

13. Although Myers is correct that HAR § 15–15–93(c) mandates a hearing on an order to show cause, HAR § 15–15–93 is silent on whether *a motion* for an order to show cause requires a hearing. However, as discussed *supra,* HAR § 15–15–70, governing the general practice of motions, is applicable in determining whether the LUC is required to hold a hearing on *a motion.*

14. Because the Hui's motion for an order to show cause requested a hearing and there is a regulatory mandate that the LUC hold a hearing once a hearing is requested, we need not address whether the January 2004 hearing was mandated by statute or constitutional due process.

§ 15-15-93(b). In other words, the only determination the LUC was required to make when hearing the instant motion for an order to show cause was whether it had reason to believe that Myers had failed to perform (1) according to the conditions imposed by the November 1989 order or (2) any representations or commitments made that led to the November 1989 order. As such, the LUC was not required to—and, therefore, did not—determine the Hui's rights and privileges to protect their native Hawaiian cultural and traditional practices at Kaniakapupu.

Moreover, the possible reversion of Myers' property to conservation district was *not* at stake in the instant motion for an order to show cause inasmuch as the LUC could not revert Myers' property to its former land use classification, *i.e.*, conservation district, on a *motion* for an order to show cause. *Only if* the LUC had granted the motion would the LUC have issued to Myers "an order to show cause why the property should not revert to its former land use classification or be changed to a more appropriate classification." HAR § 15-15-93(b). Stated differently, the Hui's motion for an order to show cause was essentially a threshold motion or procedural vehicle to obtain a show cause hearing *in order for* the LUC to determine the rights, duties, or privileges of specific parties. Furthermore, the LUC did not determine Myers' and Midkiff's "duty to use their property consistent with their representations and commitments made in 1989" at the January 2004 hearing on the motion for order to show cause. Rather, the November *1989* order, wherein the LUC granted the

1989 boundary amendment petition, "determined" Myers' and Midkiff's "duty" to use their property consistent with the representations and commitments that they made during the hearing on the 1989 boundary amendment petition. In other words, the most the LUC determined at the January *2004* hearing was that Myers and Midkiff did not *breach* their duties set forth in the November 1989 order. Consequently, the purpose of the January 2004 hearing was clearly *not* to determine the rights, duties, or privileges of specific parties. *Cf. Ko'olau Agric. Co. v. Comm'n on Water Res. Mgmt.*, 83 Hawai'i 484, 493, 496, 927 P.2d 1367, 1376, 1379 (1996) (holding that, designation of water management area, unlike water use permitting, does not determine the legal rights, duties, or privileges of specific parties because, *inter alia*, respective rights of water users are not required to be determined). Thus, the January 2004 hearing did not constitute a contested case for the purposes of obtaining judicial review pursuant to HRS § 91-14(a). Accordingly, we hold that the circuit court did not err in dismissing the Hui's appeal for lack of subject matter jurisdiction.[15]

### B. The Hui's Remaining Contentions

#### 1. The Circuit Court's Conclusion that it Lacked Subject Matter Jurisdiction to Determine Whether the Hui was Entitled to a Contested Case Hearing

■ The Hui maintains that the circuit court erred in concluding that it did not have

---

**15.** The Hui also raises on appeal that the circuit court erred in concluding that it has jurisdiction only over orders arising from a "contested case hearing." The Hui apparently argues that jurisdiction is limited to final orders issued in contested *cases*, not contested case *hearings*. However, as discussed *supra*, "*[a]* contested case is an agency *hearing* that 1) is required by law and 2) determines the rights, duties, or privileges of specific parties." *PASH*, 79 Hawai'i at 431, 903 P.2d at 1252 (citation and internal quotation marks omitted) (emphases added). As such, the Hui's contention is without merit.

Furthermore, the Hui contends that, inasmuch as its motion for an order to show cause "is a part of" the 1989 boundary amendment petition, the LUC's denial of its motion for an order to show cause "is a final decision and order in a contested case." (Citing HRS § 91-14(a).) For

purposes of HRS § 91-14(a), this court has defined "final order" to mean "an order ending the proceedings, leaving nothing further to be accomplished. Consequently, an order is not final if the rights of a party involved remain undetermined or if the matter is retained for further action." *Gealon v. Keala*, 60 Haw. 513, 520, 591 P.2d 621, 626 (1979) (citations omitted). In this case, the "final decision and order in a contested case" is the November 1989 order that finally determined the 1989 boundary amendment petition, *not* the LUC's denial of the Hui's motion for an order to show cause, inasmuch as the November 1989 order left nothing further to be accomplished with respect to the 1989 boundary amendment petition. The November 1989 order, however, is not at issue in the instant case. Consequently, the Hui's argument is without merit.

subject matter jurisdiction to determine whether the Hui was entitled to a contested case hearing. The Hui argues that, "inasmuch as no contested case hearing was held, it must be decided whether a contested case hearing should have been held." (Citation omitted.) In support of its foregoing contention, the Hui relies on *International Brotherhood of Painters and Allied Trades v. Befitel*, 104 Hawai'i 275, 88 P.3d 647 (2004) [hereinafter, *International Brotherhood*]. The Hui asserts that a contested case hearing should have been held because the Hui "met its burden of showing that there [wa]s a reason to believe that ... Myers failed to perform according to the conditions the LUC imposed and failed to perform the representations or commitments she made to the LUC[.]" Stated differently, the Hui essentially argues that its motion for an order to show cause should have been granted, and, thus, a contested case hearing should have been held thereon.

Myers asserts that "[a]ppellate courts, upon determining that they lack jurisdiction—or that any other courts previously considering the case lacked jurisdiction—shall not require anything other than a dismissal of the appeal or action." (Citation omitted.) In support of her foregoing contention, Myers relies on *Pele Defense Fund v. Puna Geothermal Venture*, 77 Hawai'i 64, 69 n. 10, 881 P.2d 1210, 1215 n. 10 (1994). Myers argued that *Pele Defense Fund* had criticized an earlier decision by the Intermediate Court of Appeals (ICA), *Simpson v. Department of Land and Natural Resources*, 8 Haw.App. 16, 791 P.2d 1267 (1990), that had remanded a case to an agency with directions to hold a contested case hearing when there was no appellate jurisdiction in the first instance.

In *Simpson*, the ICA held that a public hearing required by law is not a contested case where (1) the agency has properly promulgated specific procedures for a contested case hearing and (2) a party has failed to follow such procedures. *Id.* at 24–25, 791 P.2d at 1273. The petitioner had applied for a mooring permit from the Department of Land and Natural Resources (DLNR) and participated in a public hearing required by

law. *Id.* at 18, 791 P.2d at 1270. The petitioner, however, did not request a contested case hearing. *Id.* at 19, 791 P.2d at 1271. After the Board of Land and Natural Resources denied the petitioner's application for a mooring permit, the petitioner filed a notice of appeal to the circuit court. *Id.* The circuit court dismissed the appeal on the ground that it lacked subject matter jurisdiction inasmuch as there was no final decision from a contested case. *Id.* at 19–20, 791 P.2d at 1271.

On appeal, the ICA agreed with the circuit court that the petitioner's appeal was not from a contested case. *Id.* at 18, 791 P.2d at 1270. However, the ICA reversed and remanded to the circuit court with a direction to remand to the DLNR for a contested case hearing because "the minimum requirements of fairness required the DLNR to inform [the petitioner] that ... he had a right to request a 'contested case hearing.'" *Id.*

Four years later, this court in *Pele Defense Fund* criticized the decision of the court in *Simpson* to reverse and remand to the circuit court. This court stated in a footnote:

> Although the ICA found that the circuit court lacked jurisdiction because [the petitioner] did not participate in a contested case, it nonetheless reversed the dismissal of [the petitioner's] claim and remanded with direction to remand the matter to the DLNR for a contested case hearing. *Lacking jurisdiction, the circuit court could do nothing but dismiss the appeal.* Requiring a remand to the DLNR with instructions to provide a contested case hearing directly contradicts the proper finding of a lack of jurisdiction in *Simpson. Jurisdiction is the base requirement for any court considering and resolving an appeal or original action. Appellate courts, upon determining that they lack jurisdiction—or that any other courts previously considering the case lacked jurisdiction—shall not require anything other than a dismissal of the appeal or action. Without jurisdiction, a court is not in a position to consider the case further.*

77 Hawai'i at 69 n. 10, 881 P.2d at 1215 n. 10 (citation and internal quotation marks omitted) (emphases added); *see Bush*, 76 Hawai'i

at 136, 870 P.2d at 1280 (holding that judicial review by the circuit court of the agency's denial of the appellants' request for a contested case hearing as well as review of the merits of the agency's decision "is unattainable due to a lack of subject matter jurisdiction").

In the instant case, the Hui essentially argues that it is entitled to a contested case hearing because its motion for an order to show cause should have been *granted,* not denied.[16] As such, the Hui essentially requests this court to review the LUC's order denying the Hui's motion for an order to show cause and determine that the LUC erred in denying the Hui's motion. Such a request, however, "is unattainable due to a lack of subject matter jurisdiction." *Bush,* 76 Hawaiʻi at 136, 870 P.2d at 1280. As discussed *supra,* the January 2004 hearing was not a contested case hearing for the purpose of obtaining judicial review pursuant to HRS § 91–14(a) because it did not determine the rights, duties, or privileges of specific parties. Consequently, the circuit court correctly dismissed the Hui's appeal for lack of subject matter jurisdiction, and, "[l]acking jurisdiction, the circuit court could do nothing but dismiss the appeal." *Pele Defense Fund,* 77 Hawaiʻi at 69 n. 10, 881 P.2d at 1215 n. 10. Accordingly, we overrule *Simpson* to the extent that it required a remand to the DLNR with instructions to provide a contested case hearing when it lacked jurisdiction to do so.

Moreover, the Hui's reliance on *International Brotherhood* is misplaced. In *International Brotherhood,* this court held that the circuit court lacked subject matter jurisdiction inasmuch as a contested case hearing

was not required in the determination by the director of the Department of Labor and Industrial Relations (DLIR) to register an apprenticeship program pursuant to HRS § 372–4 (1993) (relating to the establishment of an apprenticeship counsel which shall sit in an advisory capacity to the director on matters within the jurisdiction of the DLIR dealing with apprenticeship programs). 104 Hawaiʻi at 276, 88 P.3d at 648. This court determined that a contested case hearing was not required because, *inter alia,* approval of the registration request by the director did not require a constitutionally mandated due process hearing. *Id.* at 284, 88 P.3d at 656. Inasmuch as this court concluded that the circuit court lacked subject matter jurisdiction to entertain the appeal, this court did *not* review the merits of the director's decision approving the registration request. *Id.* at 280–81, 88 P.3d at 652–53 (stating that the appellants' first point of error that "the circuit court erred in concluding that it had subject matter jurisdiction pursuant to HRS chapter 91 when the agency did not hold a contested case hearing and where none was required" was dispositive). As such, *International Brotherhood* is consistent with this court's prior holdings in *Pele Defense Fund* and *Bush* relating to subject matter jurisdiction and, therefore, does not support the Hui's contention that the circuit court erred in concluding that it did not have jurisdiction to determine whether the Hui was entitled to a contested case hearing. In other words, *International Brotherhood* does not support the proposition that a circuit court may review the merits of the agency's decision when the circuit court lacks subject matter jurisdiction to hear the appeal pursuant to HRS § 91–14(a).[17] Thus, we hold that the circuit

---

**16.** The LUC concedes that, "[o]nly if the LUC grants a motion and issues an order to show cause would a contested case be conducted." *See Lanai Co. v. Land Use Comm'n,* 105 Hawaiʻi 296, 97 P.3d 372 (2004) (reviewing an agency appeal from an LUC decision arising from an order to show cause).

**17.** The Hui also cites to *Mortensen v. Board of Trustees of Employees' Retirement System,* 52 Haw. 212, 473 P.2d 866 (1970), apparently in support of its argument that the circuit court erred in concluding that it did not have jurisdiction to determine whether it was entitled to a contested case hearing. In *Mortensen,* this court

held that applicants for accidental disability retirement benefits from the Employees' Retirement System of the State of Hawaiʻi (ERS) were entitled to trial-type hearings at some point in the administrative process. Although not clearly stated in *Mortensen,* this court later noted that

> [t]he proceedings of the ERS with respect to determining service-connected disability retirement benefits are "contested cases" within the meaning of the Hawaiʻi Administrative Procedure Act, HRS ch. 91 (1985). *See generally Mortensen* [, 52 Haw. at 212, 473 P.2d at 866]. As such, an aggrieved ERS member has a right to judicial review by the circuit court of a final

court did not err in concluding that it did not have jurisdiction to determine whether the Hui was entitled to a contested case hearing.

### 2. Alleged Lack of Judicial Review

Lastly, the Hui argues that, "[i]f the [c]ircuit [c]ourt has no jurisdiction to determine if an appellant were entitled to a contested case hearing after having requested one, any agency could arbitrarily and capriciously deny anyone a hearing at any time, regardless of whether such hearing were required by law, and the aggrieved party could never obtain judicial review of such denial." However, in this case, the Hui did *not* request a *contested case* hearing. Indeed, the Hui concedes that "there is no procedural vehicle for '[a]ny party or interested person' to obtain a contested case hearing on whether a petitioner has failed to perform according to the conditions imposed or has failed to perform according to the representations or commitments she made[.]" Consequently, the Hui's assertion is without merit.

### IV. *CONCLUSION*

Based on the foregoing, we affirm the circuit court's November 5, 2004 judgment.

Dissenting Opinion by ACOBA, J., in which DUFFY, J., joins.

The effect of the majority's decision is that all agency dispositions, if denominated as orders to show cause, although final and

binding, are unreviewable as to violations of Hawai'i Revised Statutes (HRS) § 91–14(g)(1) (1993),[1] a proposition plainly wrong and usurpative of the judicial review mandated under HRS Chapter 91. In my view, the hearing before Appellee–Appellee State of Hawai'i Land Use Commission (LUC) on the "Motion for an Order to Show Cause Regarding Enforcement of Conditions, Representations, or Commitments" (the motion) filed by Appellant–Appellant Aha Hui Malama O Kaniakapupu (Aha Hui) and held on January 15, 2004, was a contested case hearing held pursuant to HRS § 91–1(5) (1993) because it was "a proceeding in which the legal rights, duties, or privileges of specific parties [were] required by law to be determined after an opportunity for agency hearing." [2]

Because the hearing was one required under LUC rules, it was one "required by law." HRS § 91–1(5) (1993). In denying Aha Hui's request that an order to show cause "issue[ ] because [Elizabeth Midkiff Myers fka Elizabeth M. Morris (Myers) ] failed to comply with . . . conditions in No. 4 and No. 8" to the LUC reclassification of the subject land, the LUC determined the "legal rights . . . of specific parties" under HRS 91–1(5). The LUC order denying the motion (the order) ended the proceedings and, thus, was a "final decision and order." HRS § 91–14(a) (1993). Aha Hui was plainly a "person aggrieved," [3] HRS § 91–14(a), by the LUC order. Accordingly, Aha Hui was entitled to judicial

decision and order of the ERS. *Id.* at 215, 473 P.2d at 869; *see also* HRS § 91–14 (1985). *Sifagaloa v. Bd. of Trs. of Employees' Ret. Sys.*, 74 Haw. 181, 186–87 n. 4, 840 P.2d 367 at 369 n. 4 (1992). Inasmuch as the January 2004 hearing did *not* constitute a contested case, *Mortensen* is distinguishable from this case.

1. Hawai'i Revised Statutes (HRS) § 91–14(g) provides in relevant part:
 Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
 (1) In violation of constitutional or statutory provisions; or
 (2) In excess of the statutory authority or jurisdiction of the agency; or
 (3) Made upon unlawful procedure; or

 (4) Affected by other error of law; or
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

2. HRS § 91–1(5) (1993) defines a "contested case" as "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing."

3. HRS § 91–1 defines "persons" as "individuals, partnerships, corporations, associations, or public or private organizations of any character other than agencies."

review of the order under HRS § 91–14(a).[4] Hence, the circuit court of the first circuit (the court) had subject matter jurisdiction over Aha Hui's appeal.

## I.

First, it should be observed that, in this case, a hearing was required and was not merely held at the discretion of the agency. *Cf. Lingle v. Hawai'i Gov't Employees Ass'n, AFSCME, Local 152,* 107 Hawai'i 178, 184, 111 P.3d 587, 593 (2005) (explaining that "[i]f the statute or rule governing the activity in question does not *mandate* a hearing prior to the administrative agency's decision-making, the actions of the administrative agency are not 'required by law' and do not amount to 'a final decision or order in a contested case' from which a direct appeal to circuit court is possible") (quoting *Bush v. Hawaiian Homes Comm'n,* 76 Hawai'i 128, 134, 870 P.2d 1272, 1278 (1994) (emphasis in original)). As the majority concedes, the LUC rules mandated a hearing "prior to the [LUC's] decision-making," *id.* at 184, 111 P.3d at 593, thus acknowledging that the hearing herein was "required by law," HRS § 91–1(5), and that

the LUC's decision was one for which judicial review is possible, HRS § 91–14.

## II.

### A.

Second, the legal rights of specific parties were determined after the opportunity for an agency hearing. Aha Hui was formed in 2000 [5] for the purpose of acting as a "steward" of Kaniakapupu, the ruins of the summer home of King Kamehameha III, which abuts Myers' property.[6] According to Aha Hui, "Kaniakapupu, a property steeped in Hawaiian culture and history, is located on the property immediately mauka[[7]] of and borders [Myers'] property. Kaniakapupu and [Myers'] property share a common boundary. The [Midkiff/Myers] property consists of approximately 4.813 acres."

The LUC order recites that Aha Hui "argued that an Order to Show Cause should be issued because [Myers] failed to comply with representations and commitments made to the [LUC] with respect to conditions 4 and 8 during the original [LUC] proceedings." Condition No. 4 [8] proscribes Myers from sell-

4. HRS § 91–14(a) (1993) provides in relevant part:

(a) *Any person aggrieved by a final decision and order in a contested case* or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief *is entitled to judicial review thereof under this chapter;* but nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo, including the right of trial by jury, provided by law. . . .
(Emphases added.)

5. The minutes for the Land Use Commission (LUC) meeting held on March 27, 2003, indicates that counsel for Aha Hui Malama O Kaniakapupu (Aha Hui) represented that it was formed in 2002.

6. In a letter dated March 1, 2002, the Administrator of the Department of Land and Natural Resources discussed Aha Hui's role as a "steward" of Kaniakapupu. In relevant part, the letter stated:

It was good meeting with you on December 12, 2001, to discuss Kaniakapupu, and the involvement of your organization with this significant historic property associated with the reign of King Kamehameha III. The State His-

toric Preservation Division appreciates all the hard work and time your organization has voluntarily dedicated to helping to protect and preserve this location, especially the maintenance of the grounds and the clearing of the ever encroaching jungle.

As we discussed at our meeting the State is not giving exclusive control of Kaniakapupu to your organization. However, we are most comfortable to continue working with you in a cooperative effort to preserve this historic place.
. . . .
We greatly appreciate [Aha Hui's] willingness to step forward and assume a stewardship responsibility for this property, and again thank you for all you have accomplished to date.

7. "Mauka" is defined as "inland." M. Pukui & S. Elbert, *Hawaiian Dictionary* 242 (rev. ed.1986).

8. Condition No. 4 provides:

4. *That [Midkiff and Myers] shall agree to a covenant, said covenant to run with the land* and in a form agreeable to the Office of State Planning *that, with respect to the Midkiff/Myers [P]arcel (TMK: 2-2-55:04), for a period of 20 years after the date of this [o]rder, if [Midkiff] or*

ing the property to the public unless the property was first offered to Midkiff or conveyed to any of their respective children. Condition No. 8 [9] states that Myers shall develop the Property only in substantial compliance with their previous representations to the LUC. According to Aha Hui, by "listing of the [Myers parcel] for sale," Myers "had failed the commitment to keep the properties in family residential use." [10] As a result, Aha Hui stated that it was concerned about adverse "i) potential impacts to the restoration of Kaniakapupu from new landowners; and ii) the loss of 'good stewards' of the land (Midkiff [and] Myers) [who] protected natural and cultural resources in the area, including Kaniakapupu and outlying burial mounds around the Nuuanu Stream."

Aha Hui requested that "[the LUC] issue an Order to Show Cause [as to] why [the property] should not revert to its former land use classification or be changed to a more appropriate classification consistent with its surrounding environmental and cultural sensitivities." (Internal quotation marks omitted.) Aha Hui, as a party with an interest in adjoining land, had a right to have its claim that it was adversely affected determined in a contested case hearing. *See Town v. Land Use Comm'n*, 55 Haw. 538, 548, 524 P.2d 84, 91 (1974) (holding that proceedings involving a grant of a petition to amend district designation was a "contested case" within the meaning of HRS § 91–1 inasmuch as appel-

lant had "a property interest in the amend[ment] of a district boundary when his property adjoins the property that is being redistricted" and that "any action taken on the petition for boundary change is a proceeding in which appellant has legal rights as a specific and interested party and is entitled by law to have a determination on those rights"); *East Diamond Head Ass'n v. Zoning Bd. of Appeals of the City & County of Honolulu*, 52 Haw. 518, 519–20, 479 P.2d 796, 797 (1971) (holding, in a case involving a petition for a variance from residential to industrial use of property, that adjoining landowners were "person(s) aggrieved" within the meaning of HRS § 91–14(a) inasmuch as each landowner had sufficiently alleged that they had "a legal interest worthy of judicial recognition ... to preserve the continued enjoyment of his [or her] realty by protecting it from threatening neighborhood change" (brackets in original)).

### B.

At the agency hearing, the President of Aha Hui was present and represented by counsel. Counsel for Myers, as well as for the Department of Planning and Permitting and the State Office of Planning were also present. Russell Kumabe (Kumabe), a Staff Planner for the LUC, summarized a staff report [11] and presented a "GIS" map orientation and photographs of the area in aid of his

---

*[Myers] desires to sell or convey all or portions of their ownership interest in said parcel, he or she shall first offer such interest each to the other or in the alternate convey such interest to any of his or her children, as the case may be; and if any of the children so acquiring said interest desires to sell or convey all or portion[s] of their interest in said parcel, they shall first offer such interest in the parcel to their siblings and/or [Midkiff] and [Myers], as the case may be, however, provided that the holder of interest in the Midkiff/Myers [P]arcel may mortgage the interest at any time.*
(Emphases added.)

9. Condition No. 8 states that "[Midkiff and Myers] shall develop the Property *in substantial compliance with representations made to the [LUC] in obtaining the reclassification of the Property.*" (Emphasis added.)

10. Aha Hui contends that the description of the property in the Real Estate Buyer's Guide "distastefully attempts to use the historic Kaniakapu-

pu, the summer home of Kamehameha III, as a selling point," with the inclusion of the phrase "[n]earby was once the site of a summer home of King Kamehameha III, in the neighborhood."

11. The staff report provided by the State's Office of Planning sets forth the general background of the properties involved and the status of these properties with respect to ownership, improvements made, zoning changes, and any pending permit applications that affect the said properties. It also makes three recommendations to the LUC as to the disposition of Aha Hui's motion for an order to show cause including (1) issuance of an order to show cause, if the LUC believed there has been a failure to perform, (2) continuance of the LUC's action, if it determined that additional information may be needed, and (3) the denial of the motion on the basis that no failure to perform was evident from the evidence, information, and arguments filed with the LUC.

summary. John Chang (Chang), an Executive Officer of the Office of Planning, provided video footage to indicate the boundary between the subject property and Myers' property. Although she indicated that she would prefer to submit her testimony in writing, Michelle Matson, a "public witness," was also called to comment.

Counsel for Aha Hui argued that Myers had not complied with Condition Nos. 4 and 8 and presented photos and a map of the area. Counsel for Myers asserted that Myers had complied with Condition No. 4 prior to listing the subject property for sale. LUC Chairman Lawrence Ing stated that the language of Condition No. 4 was "not as clear as it should have been" and "commented that [Myers] could have possibly worked something out rather than selling it to the outside." Commissioner Kyong–Su Im stated that he interpreted Condition No. 4 as allowing Myers to make an offer to sell her property only to Midkiff or her children and not to third parties.

Chang related that the Office of Planning believed Aha Hui's motion was premature, presumably since Myers had withdrawn her listing, and that the property should remain in its current classification. Counsel for Myers was then questioned by Commissioner Bruce Coppa as to the actual value and the real property tax assessment of the subject property. Commissioner Pravin Desai of the LUC expressed concern as to whether the $12,000,000 sales price to Midkiff was "sincere," apparently in light of the $2,000,000 tax assessed value of the property. Counsel for both parties presented argument to the LUC.

### C.

Following the hearing, the LUC voted that Aha Hui had not met its burden of proof by a vote of seven to one, with one member absent. The LUC issued a twelve-page written "Order Denying [Aha Hui's] Motion for an Order to Show Cause Regarding Enforcement of Conditions, Representations or Commitments" on March 18, 2004. The order set forth the background of the reclassification, the assertions of the parties, the events that took place in the proceeding, and the LUC's decision. The LUC observed that "[t]hrough the evidence and arguments provided by [Aha Hui] and the parties, the [LUC] was concerned that [Aha Hui] did not meet its burden[ ] in demonstrating that [Midkiff or Myers] had not satisfied Condition Nos. 4 and 8." The LUC concluded that "having considered [the motion, the LUC] concludes that [Aha Hui] *has not met its burden in showing there has been a failure to perform a condition, representation, or commitment on the part of [Myers]*." (Emphasis added.) A final decision and order was thus filed by the LUC. The LUC, then, did decide the merits of Aha Hui's claim.

### D.

Hence, in line with HRS § 91–1(5), the proceeding involved "specific parties," here, Myers and Aha Hui. In determining that the motion should be denied, the LUC decided the "legal rights," HRS § 91–1(5), of these parties. As required by HRS § 91–1(5), "these rights" were "determined after an opportunity for agency hearing." Aha Hui plainly was "aggrieved," HRS § 91–14(a), by this ruling. *See Life of the Land v. Land Use Comm'n*, 61 Haw. 3, 8–9, 594 P.2d 1079, 1082–83 (1979) (recognizing that persons living near property sought to be reclassified and those with "personal" and "special" "aesthetic and environmental interests" are "person[s] aggrieved" pursuant to HRS § 91–14(a)).

### III.

It is noteworthy that in deciding whether or not Aha Hui had met its "burden" based upon the evidence, the LUC was performing an adjudicatory function which is inherent in a contested case hearing. *Hawai'i Gov't Employees' Ass'n, AFSCME Local 152 v. Pub. Employees Comp. Appeals Bd. of the State of Hawaii*, 10 Haw.App. 99, 107, 861 P.2d 747, 752 (1993) (defining a contested case hearing as "one in which the agency performs an adjudicative as compared to an administrative function" although noting that "[t]he line between [the rulemaking and adjudicating] functions is not always a clear one and in fact the two functions merge at many

points" (internal quotation marks and citations omitted)); *Shoreline Transp., Inc. v. Robert's Tours and Transp., Inc.,* 70 Haw. 585, 591, 779 P.2d 868, 872 (1989) (opining that adjudication is "concerned with the determination of past and *present rights* and liabilities[ ]" and that "[t]ypically, there is involved a determination as to whether past conduct was unlawful, so that the proceeding is characterized by an accusatory flavor and may result in disciplinary action" (internal quotation marks and citations omitted) (emphasis added)). As we have said, "adjudication" is defined as "[t]he legal process of resolving a dispute" or "the process of judicially deciding a case." *RGIS Inventory Specialist v. Hawai'i Civil Rights Comm'n,* 104 Hawai'i 158, 161, 86 P.3d 449, 452 (2004) (quoting *Black's Law Dictionary* 42 (7th ed.1999)).

In the instant case, the LUC had to determine whether Myers' "past conduct was unlawful," *Shoreline,* 70 Haw. at 591, 779 P.2d at 872, in terms of whether Myers had previously violated Condition Nos. 4 and 8. Further, the hearing on the motion "was characterized by an accusatory flavor," *id.,* inasmuch as Aha Hui asserted that Myers had in fact breached such conditions. The hearing on the motion could have resulted in a form of "disciplinary action," *id.,* because the relief requested by Aha Hui was an order that the subject property revert back to conservation district or be reclassified "to a more appropriate classification". As indicated in its written order, the LUC considered "evidence and arguments" in assessing whether Aha Hui had met its "burden" that Myers had breached her duty to use the property consistent with conditions imposed by the LUC.

By denying the motion, the LUC adjudicated Aha Hui's right to preclude Myers from proceeding in her efforts to sell her property. With its decision, the LUC rejected the objections of Aha Hui, a party with an interest in adjacent land. *Cf. Pub. Access Shoreline Hawai'i v. Hawai'i County Planning Comm'n,* 79 Hawai'i 425, 432, 903 P.2d 1246, 1253 (1995) (holding that a special management area use permit application proceeding was a contested case hearing because the applicant "sought to have the legal rights, duties, or privileges of land in which it held an interest declared over the objections of other landowners and residents" (internal quotation marks and citation omitted)).

Hence, the LUC's denial of the motion was more than just a "threshold motion or procedural vehicle." Majority opinion at 134, 139 P.3d at 722. The hearing was "typical[ ]" of an adjudicatory proceeding, *Shoreline,* 70 Haw. at 591, 779 P.2d at 872, because the LUC had "resolv[ed] a dispute" through a "legal process," *RGIS,* 104 Hawai'i at 161, 86 P.3d at 452, *i.e.,* the hearing mandated by the LUC rules, and based on the evidence submitted, determined the "legal rights" of the parties, HRS § 91–1(5), to the controversy.

## IV.

Additionally, it cannot be disputed that the LUC's decision was final. For the purposes of an agency appeal under HRS § 91–14, a "final order" is "an order ending the proceedings, leaving nothing further to be accomplished." *Gealon v. Keala,* 60 Haw. 513, 520, 591 P.2d 621, 626 (1979). As stated by this court in *Gealon,* "an order is not final if the rights of a party involved remain undetermined or if the matter is retained for further action." *Id.* We have also stated that "[w]hat determines the finality of an order . . . is the nature and effect of the order." *Lindinha v. Hilo Coast Processing Co.,* 104 Hawai'i 164, 168, 86 P.3d 973, 977 (2004) (quoting *In re Hawaii Gov't Employees' Ass'n,* 63 Haw. 85, 88, 621 P.2d 361, 363 (1980)). The Supreme Court in *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 71, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970), has also elaborated that "the relevant considerations in determining finality are whether the process of administrative decision-making has reached a stage *where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined or legal consequences will flow from the agency action.*" (Emphasis added.)

In effect, the LUC's order left "nothing further to be accomplished," *Gealon,* 60 Haw. at 520, 591 P.2d at 626. Under the terms of the LUC's order, nothing was left for adjudi-

cation. Thus, neither Aha Hui's or Myers' rights "remain[ed] undetermined," *id.*, nor was "the matter retained for further action[,]" *id.* Because the LUC resolved the dispute and completed the matter, "judicial review will not disrupt the orderly process of adjudication." *Port of Boston*, 400 U.S. at 71, 91 S.Ct. 203. The "rights or obligations," *id.*, of Myers and Aha Hui, then, have been determined and "legal consequences," *id.*, will flow from the LUC's decision.

## V.

Thus, I cannot agree with the majority's assertion that "the LUC did not determine Myers' and Midkiff's[12] 'duty to use their property consistent with their representations and commitments made in 1989' at the January 2004 hearing on the motion for order to show cause[,]" majority opinion at 134, 139 P.3d at 722, or with its conclusion that "the most the LUC determined at the January *2004* hearing was that Myers and Midkiff did not *breach* their duties set forth in the November 1989 order," *id.* at 134, 139 P.3d at 722 (emphases in original).

At the hearing on the motion, the LUC reaffirmed the duties required of Myers by Condition Nos. 4 and 8. In discussing the "interpretations of compliance," the LUC decided to reject Aha Hui's claim of breach.[13] This necessarily involved an affirmation of Myers' rights, duties, and privileges and a final adverse determination of Aha Hui's claim. Indeed, contrary to the majority's characterization, the LUC stated "it determined that the offer of first refusal requirement [imposed on Myers] *was satisfied.*" (Emphasis added.) The LUC's decision thus effectively paves the way for sale of the property and ends Aha Hui's objective of blocking the sale.

Thus, with all due respect, the majority's contention that "the possible reversion of Myers' property to conservation district was *not* at stake in the [motion] inasmuch as the LUC could not revert Myers' property to its former land use classification, *i.e.*, conservation district, on a *motion* for an order to show cause[,]" majority opinion at 134, 139 P.3d at 722 (emphases in original), is erroneous. A proposed reversion or reclassification was indeed "at stake" because the LUC by its decision could and did preclude such reversion or reclassification as requested by Aha Hui. In denying Aha Hui's motion, the LUC in effect determined the reversion/ reclassification question adverse to Aha Hui in a decision and order that was final. If the LUC's decision is in fact wrong, Aha Hui has been erroneously deprived of its rights. The effect of the majority's decision is to make that deprivation unreviewable, contrary to the "entitle[ment]" to judicial review guaranteed under HRS § 91–14.

## VI.

The majority concludes that the "court did not err in dismissing [Aha Hui's] appeal for lack of subject matter jurisdiction." Majority opinion at 134, 139 P.3d at 722. It seemingly rests this holding on the view that inasmuch as the LUC denied the motion, a contested case was not held; however, if the LUC had granted the motion, a subsequent contested case hearing would have been held and this court would then have jurisdiction pursuant to HRS § 91–14(a). Majority opinion at 134, 139 P.3d at 722. In other words, under the majority's rationale, if the LUC had granted the motion, its ultimate decision would be subject to this court's review, but

12. The motion for an order to show cause lists Midkiff, Myers, and the Henry H. Shigekane Revocable Trust as parties. However, although the majority refers to Midkiff, the motion only relates to Myers' sale of her land and she was the only party to file a memorandum in opposition.

13. The LUC's order stated:
The [LUC] discussed the interpretations of compliance with Condition No. 4, and concluded that the intent of the condition was to enforce the representations of [Midkiff and Myers] to keep the [subject property] for family use purposes. *It determined that the offer of first refusal requirement was satisfied,* but it raised the concerns that the $12,000,000 listed sales price in relation to current infrastructure costs and tax assessment of the properties called into question the sincerity of the offer and refusal on the sales price between Myers and Midkiff; and if the property were sold for near the list price the significant financial gain would be contrary to [Myers'] representations. (Emphases added.)

since it denied the motion, its decision is unreviewable.

But the fallacy of the majority's position is that the outcome of the present case is the same as it would have been had a contested case hearing been held and Aha Hui not prevailed. Undoubtedly, in the latter case, as the majority indicates, the order would be subject to judicial review. The effect of the LUC's order in this case is the same and the consequences flowing from it—defeat of Aha Hui's claim for reclassification—identical. Yet in an anomalous holding, the majority would reject judicial review. To so decide deprives Aha Hui of the judicial review mandated by HRS § 91-14(a).

### VII.

In this case, whether or not a requested remedy—a "possible reversion," according to the majority, majority opinion at 134, 139 P.3d at 722, was or could have been granted by the LUC is wholly irrelevant to the determination of whether the January 15, 2004 hearing was a contested case hearing. The fact is that such a possibility *was* foreclosed by the LUC's order and, thus, the rights of the parties as to that claim was finally decided by the agency. In concluding that "[Aha Hui's] motion for an order to show cause was essentially a threshold motion or procedural vehicle to obtain a show cause hearing *in order for* the LUC to determine the rights, duties, or privileges of specific parties[,]" majority opinion at 134, 139 P.3d at 722 (emphasis in original), the majority misstates the effect of the LUC's decision and elevates form over substance. *See Coon v. City & County of Honolulu*, 98 Hawai'i 233, 254, 47 P.3d 348, 369 (2002) (stating that elevating form over substance is an approach the Su-

preme Court has repeatedly eschewed).[14] But it must be the substance of the agency proceeding, not its form, that controls. The controlling principle is not the label accorded the motion or proceeding, but the effect of the agency's decision.

### VIII.

It bears repeating that we have held that the judicial review provision of HRS § 91-14 is to be given broad application. *See Kinkaid v. Bd. of Review of the City & County of Honolulu*, 106 Hawai'i 318, 323, 104 P.3d 905, 911 (2004) (stating that *"HRS § 91-14 . . . is a statute of broad application,* governing judicial review of contested proceedings before government agencies generally" (emphasis added)); *Jordan v. Hamada*, 62 Haw. 444, 447, 616 P.2d 1368, 1371 (1980) (noting that *"HRS § 91-14 evinces a purpose to grant broad rights to judicial review* as it permits 'any person aggrieved' by a final decision or order of a government agency to seek review, provided he institutes proceedings in the circuit court within thirty days of service of the decision or order" (emphasis added)). HRS § 91-14(a) was not intended to stifle a review of an agency decision simply because the proceeding was initiated by a motion for an order to show cause. Aha Hui is entitled to judicial review because it participated in what amounted to a contested case. Therefore, I would remand this case to the court for exercise of its subject matter jurisdiction.

---

**14.** *See also, Konno v. County of Hawai'i*, 85 Hawai'i 61, 72, 937 P.2d 397, 408 (1997) (explaining that elevating form over substance effectively renders a statute's provisions void); *Kauai Hotel, L.P. v. County of Kauai*, 81 Hawai'i 257, 262, 915 P.2d 1358, 1363 (1996) (holding that court is not willing to elevate form over substance); *Sussel v.* *Civil Serv. Comm'n*, 74 Haw. 599, 615, 851 P.2d 311, 319 (1993) (concluding that a trial court decision was clearly erroneous when it elevated form over substance); *In re Taxes of Kobayashi*, 44 Haw. 584, 590, 358 P.2d 539, 543 (1961) (holding that substance rather than the form of a transaction governs).