**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-20-0000486**
**10-DEC-2024**
**08:16 AM**
**Dkt. 184 MO**

CAAP-20-0000486

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


WEST SUNSET 32 PHASE 1, LLC; CHARLES SOMERS,
as Trustee of the Charles Somers Living Trust; and
CHARLES SOMERS, Individually,
Petitioners-Appellants-Appellees/Cross-Appellees,
v.
COUNTY OF KAUAʻI PLANNING COMMISSION; COUNTY OF
KAUAʻI PLANNING DEPARTMENT, by its Director Kaʻaina Hull,
Appellees-Appellees/Cross-Appellants,
and
MICHAEL A. KAPLAN, Trustee of the Michael A. Kaplan
Revocable Trust, dated August 12, 1992 as amended and
restated by the instrument dated July 16, 2017,
Respondent-Appellee-Appellant/Cross-Appellee


IN THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 5CC191000105)

MEMORANDUM OPINION
(By: Leonard, Acting Chief Judge, Hiraoka and Nakasone, JJ.)

In this secondary appeal, Respondent-Appellee-Appellant/Cross-Appellee Michael A. Kaplan, Trustee of the Michael A. Kaplan Revocable Trust (**Kaplan**), and Appellees-Appellees/Cross-Appellants County of Kauaʻi Planning Commission (**Planning Commission**) and County of Kauaʻi Planning Department (**Planning Department**) (together, **Kauaʻi County**) (collectively, **Appellants**), appeal from the July 17, 2020 Final Judgment (**Final Judgment**) entered by the Circuit Court of the Fifth Circuit

(**Circuit Court**),[1] in favor of Petitioners-Appellants-Appellees/Cross-Appellees West Sunset 32 Phase 1, LLC (**West Sunset**) and Charles Somers, individually and as Trustee of the Charles Somers Living Trust (**Somers**) (together, **Appellees**). Appellants also challenge the Circuit Court's June 9, 2020 Findings of Fact [(**FOFs**)], Conclusions of Law [(**COLs**)], and Decision and Order (**FOFs/COLs/Order**).

I.    BACKGROUND

This dispute arises over the development of certain properties located in the Kīlauea Stream Valley on Kauaʻi (the **Subject Properties**). The Subject Properties are located in a Special Management Area (**SMA**).

On July 15, 2010, Hendrikus Group, Inc. (**Hendrikus**) submitted a SMA Permit Assessment Application & Class IV Zoning Permit Application, proposing the following developments:  (1) structures on a portion of the Subject Properties known as the Kuleana, (2) structures on a portion of the Subject Properties known as Parcel 41, and (3) archaeological & agricultural restoration.  The Planning Commission held public hearings on Hendrikus's application on August 24, 2010, and September 28, 2010.  On September 29, 2010, the Planning Director for the Planning Department (**Planning Director**) issued "Special Management Area Use Permit SMA (U) 2011-1, Class IV Zoning Permit Z-IV-2011-1, and Use Permit U-2011-1" (the **Subject Permits**) to Hendrikus for construction of a "new single-family residence, accessory agricultural storage and office structure, development

_____

[1]        The Honorable Kathleen N.A. Watanabe presided.

of irrigation well, accessory photovoltaic installation, demolition of structure and archaeological restoration of historical auwai, rock walls, and terraces," subject to ten (10) conditions.  The Subject Permits did not provide a time frame within which Hendrikus must make substantial progress on the development.

On October 11, 2018, Kaplan purchased the Subject Properties from Hendrikus.  On March 29, 2019, Kaplan sent a letter (**Kaplan Application**) to the Planning Commission, requesting a two-year continuance to complete the work approved in the Subject Permits, and approval to modify the design of the previously approved single-family residence.

Kaplan's Application was placed on the agenda for the Planning Commission's April 23, 2019 public meeting as a "general business matter."  The Planning Director's April 16, 2019 preliminary report on Kaplan's Application recommended approving Kaplan's request for an extension of time and request to modify the single-family residence.  At the April 23, 2019 meeting, no public testimony was received, but brief statements were made by the Planning Department and Kaplan's representative.  On May 2, 2019, the Planning Commission memorialized its oral decision from the April 23, 2019 meeting approving Kaplan's Application.

On May 21, 2019, Somers filed a "Petition for the Revocation of [the Subject Permits]" (**Petition for Revocation**) pursuant to Rules of Practice and Procedure of the Kauaʻi County

Planning Commission (**RPPPC**) Chapter 12.[2]  Somers requested that the Planning Commission either revoke the May 2, 2019 approval of Kaplan's modifications and deem the Subject Permits as having lapsed, or revoke the modification, require Kaplan to comply with the notice requirements, and set the matter for further hearing following public notice.  Upon receipt, the Planning Director did not reject Somers's Petition for Revocation as incomplete, inaccurate, or failing to comply with the Planning Commission rules as provided in RPPPC § 1-12-3(b).[3]

On June 12, 2019, Kaplan filed a memorandum in opposition to Somers's Petition for Revocation, and on June 20, 2019, Somers filed a reply to Kaplan's memorandum in opposition.

On June 17, 2019, the Planning Director issued, pursuant to RPPPC 1-12-5,[4] the required director's report on

_____

[2]    Somers is the owner of a nearby property on Kāhili Quarry Road in Kilauea.

[3]    RPPPC § 1-12-3(b) states, in pertinent part:

1-12-3 Form and Content of Petition.

. . . .

(b)  The Director may reject any petition which is incomplete, inaccurate or fails to comply with the Rules of the Commission[.]

[4]    RPPPC § 1-12-5 states:

1-12-5  Revocation of Permits by the Planning Commission.  The Director shall review and investigate the basis for any petition for revocation of a permit which the Commission has final authority to grant or which the Commission makes a recommendation and report to the Kauaʻi County Council, State Land Use Commission or other agency which has the final authority to grant.  The Director shall file his report with the Commission within sixty (60) days from the date of the acceptance of the petition, unless the Commission allows the Director more time to investigate the contents of the petition.  The Commission shall review the Director's report and if the Commission finds that there is reasonable cause to believe that there currently is a
(continued...)

Somers's petition.  The Planning Director's preliminary conclusion was that there is no reasonable cause to believe there is currently a failure to perform according to the conditions imposed in the Kaplan Application, and recommended denying Somers's Petition for Revocation.

On June 25, 2019, the Planning Commission held a public meeting, and Somers's petition was considered under a "general business matter."  Attorneys for Kaplan and Somers appeared and made statements to and took questions from the commission.  The Planning Director informed the parties that the meeting was not a contested case, and that what the commission was deciding was whether to issue an order to show cause, which would involve a contested case hearing.  Somers's representative requested that the matter be reset for a public hearing to allow all interested parties to be heard.  The Planning Commission unanimously voted to deny Somers's petition, agreeing with the analysis of the Planning Department.  On June 27, 2019, the Planning Commission issued its written decision denying Somers's Petition for Revocation.

On July 25, 2019, Somers appealed the Planning Commission's decision to the Circuit Court.  On June 9, 2020, the Circuit Court entered its FOFs/COLs/Order, vacating the Planning Commission's June 27, 2019 decision, and ordering:

_____

[4](...continued)
failure to perform according to the conditions imposed, the Commission shall issue and serve upon the party bound by the conditions an Order to Show Cause why the permit should not be revoked or modified.

(Emphasis added).

(A)     [The Subject Permits] lapsed on September 28, 2012 and are deemed to be no longer in effect and no further development shall proceed under the authority of the Subject Permits;

(B)     This matter is remanded to the Planning Department with instructions to find that Kaplan's request for the construction of a farm dwelling unit in addition to the pre-existing development on the Subject Property, and amendment to modify the design of the previously permitted single family residence requires a Use Permit pursuant to Chapter 8-11.3 of the Kauai County Code, a Class IV Zoning Permit pursuant to Chapter 8-11.3 of the Kauai County Code, and constitutes "Development" pursuant to HRS 205A-22 and SMA Rule 1.4 F, thus requiring a SMA Use Permit as defined in SMA Rule 7.3 C;

(C)     The Director shall inform Kaplan of, and the [Planning Commission], the Planning Department, and Kaplan shall comply with the following requirements pursuant to SMA Rule 7.3 C (a) - (d):  the requirement of an application pursuant to SMA Rule 8.0, the public hearing requirements pursuant to SMA Rule 9.0, the Planning Commission's requirements for action pursuant to SMA Rule 10.0, and the area of critical concern to delineate the scope of information which the applicant must address; and

(D)     Kaplan's request for Development shall not be approved unless the Director or Planning Commission has first made the requisite findings pursuant to HRS § 205A-26 (2)(A) - (C) and SMA Rule 4.0 B(1) - (3) after conducting a public hearing and any other necessary hearings pursuant to HRS Ch. 205A, the SMA Rules of the County of Kauai, and the RPPPC, consistent with this Court's Findings of Fact, Conclusions of Law, and Decision and Order.

On July 17, 2020, the Circuit Court entered the Final Judgment in favor of Appellees.  Kaplan appealed on July 29, 2020.  Kauaʻi County cross-appealed on August 14, 2020.

II.  <u>POINTS OF ERROR</u>

Kaplan raises six points of error on appeal, contending that the Circuit Court erred by:  (1) exercising jurisdiction where no contested case occurred or was required to occur on Somers's petition; (2) departing from its role as an appellate court and concluding that the Subject Permits lapsed without determining that the Planning Department and Planning Commission abused their discretion in determining that substantial progress

had been made under the Subject Permits; (3) concluding that the Planning Commission's June 27, 2019 Decision contained inadequate FOFs and COLs where the commission's discretionary decision was supported by substantial evidence in the record; (4) concluding that the extension and modification of the Subject Permits was done upon improper procedure and inadequate notice; (5) ordering that the Subject Permits had lapsed and no longer in effect without remanding the matter to the Planning Commission, depriving Kaplan of vested property rights without due process; and (6) ordering that no further development shall proceed under the Subject Permits without carrying out the mandatory analysis as to whether injunctive relief was warranted.

Kauaʻi County raises two points of error, contending that the Circuit Court's (1) FOFs 55 and 56 are clearly erroneous in view of the reliable, probative, and substantial evidence on the record, and (2) COLs 32, 44, 45, 46, 47, 50, 51, 76, 77, 78, 80, 85, 87, 88, 91, 94, 97, 98, 100, 102, 110, and 111 are clearly erroneous as a matter of law.

III. APPLICABLE STANDARDS OF REVIEW

A.   Subject Matter Jurisdiction

Whether a court possesses subject matter jurisdiction is a question of law reviewable *de novo*. Kaleikini v. Thielen, 124 Hawaiʻi 1, 12, 237 P.3d 1067, 1078 (2010) (citation omitted).

> If a court lacks jurisdiction over the subject matter of a proceeding, any judgment rendered in that proceeding is invalid.  Therefore, "'[s]uch a question is valid at any stage of the case, and though a lower court is found to have lacked jurisdiction, we have jurisdiction here on appeal, not of the merits, but for the purpose of correcting an error in jurisdiction.'"

<u>Bush v. Hawaiian Homes Comm'n</u>, 76 Hawaiʻi 128, 133, 870 P.2d 1272, 1277 (1994) (citation omitted).

B.    <u>Administrative Agency Decisions - Secondary Appeals</u>

Review of a decision made by a circuit court upon its review of an agency's decision is a secondary appeal.  <u>Flores v. Bd. of Land & Nat. Res.</u>, 143 Hawaiʻi 114, 120, 424 P.3d 469, 475 (2018).  The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in Hawaii Revised Statutes (**HRS**) § 91-14(g) (Supp. 2023) to the agency's decision. <u>Id.</u>

HRS § 91-14(g) provides:

(g)  Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1)    In violation of constitutional or statutory provisions;

(2)    In excess of the statutory authority or jurisdiction of the agency;

(3)    Made upon unlawful procedure;

(4)    Affected by other error of law;

(5)    Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6)    Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"[U]nder HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion

under subsection (6)."  <u>United Pub. Workers, AFSCME, Local 646, AFL-CIO v. Hanneman</u>, 106 Hawaiʻi 359, 363, 105 P.3d 236, 240 (2005).

Mixed questions of law and fact are "reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case."  <u>Save Diamond Head Waters LLC v. Hans Hedemann Surf, Inc.</u>, 121 Hawaiʻi 16, 25, 211 P.3d 74, 83 (2009) (citation omitted).

IV.  <u>DISCUSSION</u>

A.  <u>The Circuit Court's Exercise of Jurisdiction over Somers's appeal</u>

Kaplan argues that the Circuit Court lacked jurisdiction to hear Somers's appeal from the Planning Commission's denial of his Petition for Revocation because no contested case occurred, nor was required to occur.  The Circuit Court determined that Somers's Petition for Revocation of the Subject Permits was a contested case by concluding:

> 19. [Planning Commission] action on a Petition for Revocation of Permits pursuant to RPPPC Ch. 12 involves a three-step process:  (1) filing a Petition for Revocation of Permits pursuant to RPPPC Rule 1-12-3, which the Planning Director may reject pursuant to RPPPC 1-12-3(b) if it is incomplete, inaccurate or fails to comply with the Rules of the [Planning Commission]; (2) holding a hearing pursuant to RPPPC Rule 1-12-5 to determine whether there is reasonable cause to believe that there is a failure to perform according to the conditions imposed on the Permits and to issue an Order to Show Cause; and (3) holding an Agency Hearing on the Order to Show Cause according to the contested case hearing procedures contained in RPPPC ch. 6, pursuant to RPPPC 1-12-7.

> 20.  According to the record, the Planning Director did not reject Somers' Petition pursuant to RPPPC Rule 1-12-3(b), the [Planning Commission] did not find that there was no reasonable cause to believe that there is a failure to perform according to the conditions imposed on the Permits pursuant to RPPPC 1-12-5, and although the [Planning Commission] did not formally issue an Order to Show Cause, Kaplan was served with a copy of Somers' Petition for Revocation and filed a memorandum in opposition to the same, to which Somers filed a reply brief.

21. At the June 25, 2019 hearing on Somers' Petition, attorneys for Somers and Kaplan argued the merits of Somers' Petition, Kaplan's architect Mr. Giorgio testified as a witness, and the [Planning Commission] voted to deny Somers' Petition based upon the merits of his Petition, not upon the threshold matter involving lack of reasonable cause.

22. Under RPPPC 1-12-7 the [Planning Commission] was required to hold an agency hearing prior to denying Somers' Petition for Revocation on its merits. Pursuant to RPPPC Rule 1-1-2, "'Agency Hearing' refers only to such hearing held by the Commission immediately prior to a judicial review of contested case as provided in Section 91-14 HRS[.]"

23. The Court determines that the June 25, 2019 [Planning Commission] hearing on Somers' Petition for Revocation of the Subject Permits was a "Contested case" as defined by HRS § 91-1 and RPPPC 1-1-2 (7)(i), and that Somers may appeal the [Planning Commission's] June 27, 2019 Decision to the Circuit Court of the Fifth Circuit pursuant to HRS § 91-14, HRS § 603-21.8, SMA Rule 15.0, RPPPC Rule 1-6-18(i), and Rule 72 of the Hawaiʻi Rules of Civil Procedure.

Judicial review over an agency appeal is authorized by HRS § 91-14 when the following requirements have been met:

> [f]irst, the proceeding that resulted in the unfavorable agency action must have been a contested case hearing . . .; second, the agency's action must represent a final decision or order, or a preliminary ruling such that deferral of review would deprive the claimant of adequate relief; third, the claimant must have followed the applicable agency rules and, therefore, have been involved in the contested case; and finally, the claimant's legal interests must have been injured—i.e., the claimant must have standing to appeal.

In re Application of Maui Elec. Co., Ltd., 141 Hawaiʻi 249, 258, 408 P.3d 1, 10 (2017) (quoting Kilakila ʻO Haleakala v. Bd. of Land & Nat. Res., 131 Hawaiʻi 193, 200, 317 P.3d 27, 34 (2013) (**Kilakila**)). "In other words, there are four requirements for judicial review over an agency appeal: a contested case hearing, finality, compliance with agency rule, and standing." Id.

HRS § 91-1 (Supp. 2023) defines a "contested case" as "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing." HRS § 91-1 defines an "agency

hearing" as "such hearing held by an agency immediately prior to a judicial review of a contested case as provided in section 91-14."[5]  "Thus, '[a] contested case is an agency hearing that 1) is required by law *and* 2) determines the rights, duties, or privileges of specific parties.'"  Kaniakapupu v. Land Use Comm'n, 111 Hawaiʻi 124, 132, 139 P.3d 712, 720 (2006) (quoting Pub. Access Shoreline Haw. v. Hawaiʻi Cnty. Plan. Comm'n, 79 Hawaiʻi 425, 431, 903 P.2d 1246, 1252 (1995)).  We first consider whether an agency hearing was required by law, and then consider whether the hearing would have determined the rights, duties, or privileges of the parties.

    1.   Required by law?

In order for an administrative agency hearing to be required by law, "it may be required by (1) agency rule, (2) statute, or (3) constitutional due process."  Kilakila, 131

---

[5]    RPPPC § 1-1-2(3)'s definition of "contested case" and § 1-1-2(7)(i)'s definition of "agency hearing" are identical to the HRS language, and state:

> 1-1-2 Definitions.  As used in these Rules, except as otherwise required by context:
>
> . . . .
>
> (3)    "Contested Case" means a proceeding in which the legal rights, duties or privileges of specific parties are required by law to be determined after an opportunity for Agency Hearing.
>
> . . . .
>
> (7) "Hearing"
>
> > (i)    "Agency Hearing" refers only to such hearing held by the Commission immediately prior to a judicial review of a contested case as provided in Section 91-14 HRS, including but not limited to Class IV, Use, and Variance Permits pursuant to the Comprehensive Zoning Ordinance of the County of Kauaʻi and other applicable laws.

-11-

Hawaiʻi at 200, 317 P.3d at 34 (citation and internal quotations omitted).

> If the statute or rule governing the activity in question does not mandate a hearing prior to the administrative agency's decision-making, the actions of the administrative agency are not "required by law" and do not amount to "a final decision or order in a contested case" from which a direct appeal to circuit court is possible.

Kaleikini, 124 Hawaiʻi at 17, 237 P.3d at 1083 (quoting Bush, 76 Hawaiʻi at 134, 870 P.2d at 1278).

Stated differently, "pursuant to HRS § 91-14, in order for proceedings before an agency to constitute a contested case from which an appeal can be maintained, the agency must be required by law to hold a hearing before a decision is rendered." Id. (citation omitted).  Here, the Circuit Court determined that the agency hearing was required by agency rule.

Chapter 12 of the RPPPC outlines the process for a petition to revoke an SMA permit.  RPPPC § 1-12-2 provides who has standing to file a petition to revoke an SMA permit, and RPPPC § 1-12-3(a) outlines the contents required in a revocation petition.  RPPPC § 1-12-3(a) provides, in pertinent part, that a revocation petition must contain:

> (1)   the identification of the permit in question and a statement concerning Section 1-12-2;
>
> (2)   the specific term or condition of the permit alleged to have been violated or not complied with;
>
> (3)   a detailed factual basis of the alleged violation; and
>
> (4)   any other information that the Director requires for an adequate investigation into the matter.

(Emphasis added).

Upon receipt of a revocation petition, the Planning Director may reject it if the Planning Director determines the

petition is "incomplete, inaccurate or fails to comply with the Rules of the [Planning] Commission."  RPPPC § 1-12-3(b).

If the Planning Director does not initially reject a revocation petition under RPPPC § 1-12-3(b), the "[Planning] Director shall review and investigate the basis" of said petition, and "file his report with the [Planning] Commission." RPPPC § 1-12-5.  The Planning Commission "shall review the Director's report, and <u>if the Commission finds there is reasonable cause</u> to believe that there currently is a failure to perform according to the conditions imposed, <u>the Commission shall issue</u> and serve upon the party bound by the conditions [(here Kaplan)] <u>an Order to Show Cause</u> why the permit should not be revoked or modified."  <u>See</u> <u>id.</u> (emphasis added).  The Circuit Court determined that step two of the Planning Commission's review of a petition for revocation involves "holding a hearing pursuant to RPPPC § 1-12-5 to determine whether there is reasonable cause to believe that there is a failure to perform" according to the permit conditions.

However, the plain language of RPPPC § 1-12-5 does not require a hearing prior to the Planning Commission's determination on whether to issue an order to show cause, and therefore, the Circuit Court's COL 19 is wrong.  Only if the Planning Commission determines that there is reasonable cause to believe there is a failure to perform according to the permit's conditions will the Planning Commission issue an order to show cause and hold an agency hearing on said order.  <u>See</u> RPPPC § 1-12-7 ("The Commission shall conduct an Agency Hearing on the

Order to Show Cause in accordance with the requirements of Chapter 6 of these Rules.").  Multiple RPPPC and SMA Rules highlight that the mandatory hearing language is absent from RPPPC § 1-12-5.  For example, RPPPC chapter 13, governing special permits, provides that "[t]he [Planning] Commission <u>shall conduct an Agency Hearing</u> within a period of sixty (60) calendar days from the date of acceptance of a properly filed and completed petition.  RPPPC § 1-13-5(a) (emphasis added).  Another example is SMA Rule 9.0, which states that "[t]he Planning Commission <u>shall conduct a public hearing</u> within a period of sixty (60) calendar days from the date of acceptance of a properly filed and completed application as determined by the Planning Department." SMA Rule 9.0(A) (emphasis added).

No mandatory hearing requirement is stated in the text of RPPPC § 1-12-5.  No hearing of any kind is required to be held prior to the Planning Commission's determination of whether to issue an order to show cause, making the decision to put Somers's petition on for hearing discretionary, and "discretionary hearings are not contested cases because they are not required by law."  <u>Lingle v. Haw. Gov't Emp. Ass'n Local 152</u>, 107 Hawaiʻi 178, 184, 111 P.3d 587, 593 (2005) (citing <u>Pele Defense Fund v. Puna Geothermal Venture</u>, 77 Hawaiʻi 64, 68, 881 P.2d 1210, 1214 (1994)).  Here, the Planning Commission did not issue an order to show cause, and thus, no agency hearing, or hearing of any kind, was required by any agency rule.

The Circuit Court, however, concluded that because (1) the Planning Director did not reject Somers's petition under

RPPPC § 1-12-3, and (2) the Planning Commission did not determine that there was no reasonable cause to believe that there is a failure to perform according to the conditions imposed on the Subject Permits, that therefore (3) the Planning Commission skipped the formal process of issuing an order to show cause and denied Somers's petition during the June 25, 2019 meeting on the merits, which they could not do prior to conducting the RPPPC § 1-12-7 agency hearing. This conclusion is wrong.

First, the Planning Commission concluded that there was no reasonable cause to believe the allegations in Somers's revocation petition. After hearing statements from Somers's and Kaplan's attorneys, the Planning Commission voted "to decide what to do on revocation of special management area Use Permit SMA(U)-2011-1 Class IV, Zoning Permit Z-IV-2011-1 and a Permit U-2011-1 for [Kaplan], a request for revocation." The Planning Commission voted to deny Somers's Petition for Revocation, and when asked to put forth a reason why, the Planning Commission said they "[a]gree with the analysis of the Planning Department." The Planning Director's Report on Somers's Petition for Revocation concluded that "the Department found that <u>there is no reasonable cause</u> to believe that there is currently a failure to perform according to the conditions imposed." (Emphasis added). Accordingly, the Planning Commission denied Somers's Petition for Revocation for lack of reasonable cause.

Second, the Planning Commission is tasked with reviewing the basis of a revocation petition when determining whether to issue an order to show cause. See RPPPC 1-12-3(a).

-15-

RPPPC § 1-12-5 provides that based on the allegations in the petition, only if the Planning Commission finds reasonable cause to believe a term or condition in the permit is not being complied with does the Planning Commission issue an order to show cause. Therefore, if the Planning Commission determines that there is no reasonable cause, it is rejecting the petition on its merits.

Lastly, the Planning Commission did not "skip" a formal process of issuing the order to show cause, because at the June 25, 2019 regularly scheduled commission meeting,[6] all the commission decided was whether to issue an order to show cause. This is evidenced by the transcript of the meeting, which provides, in pertinent parts:

> [Planning Director] Hull: Um, <u>at this point it's not a contested case</u>, so I'm not a party to the proceedings, but just serving in capacity. If the modification -- because it has been an interpretation of the department for years, quite honestly, Counsel, that, um, a modification -- the director's given the discretion to determine whether or not the public notice is necessary.
>
> . . . .
>
> [Commission Member] <u>Ms. Nogami Streufert:</u> I – I'm not sure it pertains to you right now. Um, I'm reading this Hawaiian Islands Land Trust that we just got a few minutes ago, and the last paragraph states that if we were to open this up to, uh -- I'm not sure it's called an intervention, because it -- <u>we're not in a contested case</u>, but if we were -- but --
>
> . . . .
>
> <u>Mr. Hull:</u> If it – uh, excuse me. The – the request before you folks is a petition for revocation, um, and ultimately the process for revocation is you can't immediately revoke the permits today. <u>If you are sighting towards a possible revocation, the Commission would essentially vote for an Order to Show Cause</u>, which -- which is served upon the property owner that was granted the permits and the modification extension, and within 30 days, that, uh,

---

[6] RPPPC § 1-2-2(a) provides that "Regular Meetings of the Commission shall generally be held on the second and fourth Tuesdays of each month," and June 25, 2019, was the fourth Tuesday in June.

> property owner has to demonstrate to you why these permits should not be revoked, and then they come back -- the -- the actual property owner would come back and go through the Order to Show Cause hearings, and then that would potentially be submitted over to a contested case, i.e., a hearings officer, possibly.
>
> . . . .
>
> Mr. Hull:  So -- so I think ultimately the Commission has a couple options available for action.  Uh, the Department is recommending denial of the petition to revoke the permits. You can adopt that recommendation.  You can also, um, defer the item for possibly allowing the property owner and the petitioner to perhaps come to some type of amenable agreement.  Or, uh, third, um, you could issue an order to show cause, which essentially is going down the road of revocation but giving the, uh, uh, permit holder the notice that -- that within 30 days, they have to get back to you folks as to why the permit should not be revoked. Those are essentially the three options before you folks.

(Emphasis added).

The transcript confirms not only that the meeting on June 25, 2019 was not a contested case hearing, but that the Planning Commission was deciding whether or not to take the step to issue an order to show cause.

Thus, because RPPPC § 1-12-5 does not mandate a hearing on a petition for revocation prior to the Planning Commission's decision on whether to issue an order to show cause, and the commission opted to not issue an order to show cause, not triggering the agency hearing requirement in RPPPC § 1-12-7, the June 25, 2019 meeting was not a hearing required by agency rule.

Somers does not argue that the June 25, 2019 meeting was required by agency rule.  Instead, Somers emphasizes that because he participated in the June 25, 2019 meeting as an adversary, a contested case occurred.  Somers cites to In re Application of Haw'n Elec. Co., 56 Haw. 260, 264, 535 P.2d 1102, 1105 (1975) and East Diamond Head Ass'n v. Zoning Bd. of Appeals of City & Cnty. of Honolulu, 52 Haw. 518, 524, 479 P.2d 796, 799

(1971), for the proposition that "a public hearing, conducted pursuant to public notice, was a 'contested case' within the meaning of HRS § 91-1."  However, in East Diamond Head, the hearing that was held giving rise to a contested case was required by law to take place.  See 52 Haw. at 520 n.2, 479 P.2d at 797 n.2.  As discussed, *supra*, the meeting held on June 25, 2019, was discretionary, not mandatory, and East Diamond Head is inapplicable.

In In re Hawaiian Electric Co., hearings were required to take place under Revised Laws of Hawaiʻi § 104-15 (1955),[7] which provides, "[t]he commission shall not approve any increase in rates without conducting an advertised public hearing or hearings thereon on the island which the utility is situated."  See also 56 Haw. at 268 n.5, 535 P.2d at 1108 n.5 ("The commission may, after a hearing, by order regulate, fix and change all such rates, fares, charges, classifications, rules and practices...").  In In re Hawaiian Electric Co., Hawaiian Electric Company, Inc. filed an application for a rate increase, and after the required public notice, the required hearings on the company's application took place between November 9 and 11, 1971.  Id. at 261, 535 P.2d at 1103.  Therefore, Somers's reliance on In re Hawaiian Electric Co., is misplaced.

Lastly, Somers argues that this case is analogous to Korean Buddhist Dae Won Sa Temple of Haw. v. Sullivan, 87 Hawaiʻi 217, 953 P.2d 1315 (1998) (**Korean Temple**), where Somers asserts

---

[7]     Revised Laws of Hawaiʻi § 104-15 became HRS § 269-16 (Supp. 1974).  Id. at 268, 535 P.2d at 1108.

the "[supreme] court found that the hearing before the zoning board of appeals was. . . [an] 'agency hearing' [because] . . . [the appellant] was permitted to introduce relevant evidence and cross-examine witnesses."  In <u>Korean Temple</u>, appellant Temple filed a second variance application for a height overage with the Director of the Honolulu Department of Land Utilization, and public hearings were held in September and October of 1993 before a hearings officer.[8]  <u>Id.</u> at 223, 953 P.2d at 1321.  The Temple asserted it was entitled to a "trial-like 'contested case' hearing," but the hearings officer treated the hearings as public, allowing witnesses to testify without being subject to direct or cross-examination, and allowing the Temple to proffer rebuttal witnesses and evidence.  <u>Id.</u> at 224, 953 P.2d at 1322. The director denied the Temple's second variance application, and the Temple appealed.  <u>Id.</u> at 225-26, 953 P.2d at 1323-24.

The Zoning Board of Appeals (**ZBA**) then held a hearing[9] on the temple's appeal, and largely affirmed the director's decision.  <u>Id.</u> at 227-28, 953 P.2d at 1325-26.  The temple appealed to the circuit court.  <u>Id.</u> at 228, 953 P.2d at 1326. The circuit court rejected the appeal, concluding, *inter alia*, that the Hawaiʻi Administrative Procedure Act (**HAPA**) did not require the director to hold a contested case hearing on the variance application, and instead the contested case occurred

___

[8]  Pursuant to the Revised Charter of the City and County of Honolulu (**RCCCH**), "prior to the granting of any variance, the director shall hold a public hearing thereon."  RCCCH Section 6-910(3) (1990 ed.).  Thus, the hearings before the hearings officer were required by law.

[9]  The ZBA stated that it considered the hearing a contested case hearing.  <u>Id.</u> at 227, 953 P.2d at 1325.

during the ZBA proceeding. Id. at 228, 953 P.2d at 1326. The temple appealed. Id. at 229, 953 P.2d at 1327.

The supreme court determined that the ZBA's practice of hearing appeals from the director's decisions regarding variance applications was without authorization because the 1993 amendments to the RCCCH were intended to take that power away from the board. See id. at 237-39, 953 P.2d at 1335-37. The supreme court then appears to conclude that the hearing before the zoning board was a contested case, at least in part, because the Temple was permitted to freely introduce evidence (including rebuttal evidence) before the hearings officer (which was in the record before the zoning board), was permitted to introduce evidence before the zoning board relevant to the board's inquiry of whether the director abused his discretion, and the Temple was accorded the right to call and cross-examine witnesses before the zoning board. Id. at 239-40, 953 P.2d at 1337-38.

The facts in the case before us are not analogous to those in Korean Temple. First, here, the Planning Commission stated that the June 25, 2019 meeting was not a contested case, and the parties did not dispute that it was not a contested case, whereas the ZBA in Korean Temple explicitly informed the parties that the hearing was a contested case. Id. at 227, 953 P.2d at 1325.

Second, in Korean Temple, the temple was allowed to put forward an extraordinary amount of evidence (including rebuttal evidence) before the hearings officer, introduce evidence relevant to the zoning board's inquiry, and conduct extensive

examination and cross-examination of witnesses.  Id. at 240, 953 P.2d at 1338.  Here, the Planning Director's report prior to the June 25, 2019 meeting says that the "entire record" should be considered, including public testimony, any government agency comments, and Somers's response to the Planning Director's report.  Neither party offered evidence, called witnesses, or cross-examined witnesses, and besides statements from the parties' representatives and a recap of the Planning Director's report, no testimony was received.

Lastly, pursuant to RCCCH § 6-910(3), the director was required to hold a public hearing prior to granting the Temple's variance request.  Although the supreme court determined that the agency hearing was the hearing on appeal before the ZBA, a hearing was, nevertheless, required by law to occur before the director ruled on the Temple's variance request.  This distinguishes Korean Temple from the case before us, as no hearing is required before the Planning Commission rejects a petition for revocation.

The cases relied on by Somers to support a finding of a contested case either demonstrate why the July 25, 2019 meeting was not a contested case hearing, or are otherwise distinguishable and do not offer support.  The Planning Commission meeting was not required by agency rule to take place, and the Planning Commission has the authority to reject a revocation petition when deciding whether to issue an order to show cause without holding a contested case hearing.  Therefore,

the June 25, 2019 meeting was discretionary, not mandatory, and not a contested case hearing.

> 2. <u>Was there a determination of the rights, duties, or privileges of the parties?</u>

Even assuming, *arguendo*, that the June 25, 2019 meeting on Somers's Petition for Revocation was required by law, it would not have determined the rights, duties, or privileges of the parties.  At the June 25, 2019 meeting, the Planning Commission was considering whether to issue an order to show cause, and such consideration does not determine the rights, duties, or privileges of the parties.  <u>See</u> <u>Kaniakapupu</u>, 111 Hawaiʻi at 133-34, 139 P.3d at 721-22.

In <u>Kaniakapupu</u>, on February 1, 1989, Myers petitioned the State Land Use Commission (**LUC**) to amend the land use district boundary for approximately 9.917 acres in an area known as Nuʻuana in Honolulu (the **Myers Parcel**) from "Conservation Land Use District Boundary" to "Urban Land Use District Boundary."  <u>Id.</u> at 125-26, 139 P.3d at 713-14.  The LUC approved the reclassification in November 1989 subject to certain conditions.  <u>Id.</u> at 126, 139 P.3d at 714.

In 2000, the Hui was formed "to care for and serve as a steward of Kaniakapupu," which "is located on property owned by the State that shares a common boundary with . . . the [Myers] parcel."  <u>Id.</u>  On April 21, 2003, the Hui filed a motion for an order to show cause, pursuant to Hawaiʻi Administrative Rules (**HAR**) §§ 15-15-70 and 15-15-93, seeking to have the LUC issue an order to show cause why the classification of the Myers Parcel

should not be reverted back to a conservation district.[10]  Id. at 127, 139 P.3d at 715.  The LUC held a hearing on the Hui's motion for an order to show cause, and orally voted to deny the motion on the basis "that the Hui had not met its burden of demonstrating a failure to perform a condition, representation, or commitment on the part of Myers."  Id. at 128, 139 P.3d at 716.  On appeal, the circuit court determined that the LUC did not hold a contested case hearing, and only if the motion for an order to show cause had been granted would a contested case hearing have been required.  Id. at 131, 139 P.3d at 719.

The supreme court affirmed the circuit court's conclusion that no contested case occurred, determining that the hearing on whether to issue an order to show cause did not determine the rights, duties, or privileges of the parties.  See id. at 133-34, 139 P.3d at 721-22.  Specifically, the supreme court concluded that:

> If the LUC had determined that it "ha[d] reason to believe that there had been a failure to perform according to the conditions imposed, or the representations and commitments made by [Myers]," then the LUC would have issued an "order to show cause why the property should not revert to its former land use classification or be changed to a more appropriate classification[ ]" to Myers.  HAR § 15-15-93(b).  In other words, the only determination the LUC was required to make when hearing the instant motion for an order to show cause was whether it had reason to believe that Myers had failed to perform (1) according to the conditions imposed by the November 1989 order or (2) any representations or commitments made that led to the November 1989 order.  As such, the LUC was not required to—and, therefore, did not—determine the Hui's rights and privileges to protect their native Hawaiian cultural and traditional practices at Kaniakapupu.

Id.

---

[10]    The Hui asserted, *inter alia*, that Myers violated a condition in the November 1989 approval order.  Id. at 127, 139 P.3d at 715.

The supreme court continued, stating that "the Hui's motion for an order to show cause was essentially a threshold motion or procedural vehicle to obtain a show cause hearing in order for the LUC to determine the rights, duties, or privileges of specific parties."  Id. at 134, 139 P.3d at 722.

Here, what the Planning Commission was deciding during the June 25, 2019 meeting is nearly identical to the circumstances in Kaniakapupu.  If the Planning Commission had determined there was reasonable cause to believe Kaplan had failed to perform according to the conditions of the Subject Permits, the Planning Commission would have issued an order to show cause why the Subject Permits should not be revoked.  Like Kaniakapupu, the Planning Commission was only required to determine whether it had reason to believe Kaplan was in violation of the Subject Permits, and was not required to make any determinations on whether Kaplan's plans affect Somers's conservation easements, nor whether Hendrikus or Kaplan had failed to perform according to the conditions in the Subject Permits, i.e., the rights, privileges, or duties with respect to the land in question.

Therefore, the June 25, 2019 meeting was not a contested case hearing for the purposes of obtaining judicial review pursuant to HRS § 91-14(a) because it was not required by law and it did not determine the rights, privileges, or duties of

the parties, and the Circuit Court erred in exercising jurisdiction over Somers's appeal.[11]

V.    CONCLUSION

Based on the above, we decline to reach the other points of error raised by West Sunset and the County.  The Circuit Court's July 17, 2020 Judgment is vacated, and the case is remanded to the Circuit Court for dismissal of Somers's appeal from the Planning Commission for lack of subject matter jurisdiction.

In addition, IT IS HEREBY ORDERED that Kaplan's May 30, 2024 motion for retention of oral argument is denied.

DATED: Honolulu, Hawaiʻi, December 10, 2024.

| | |
|---|---|
| On the briefs: | /s/ Katherine G. Leonard<br>Acting Chief Judge |
| Margery S. Bronster,<br>Rex Y. Fujichaku,<br>Skylar G. Lucas,<br>(Bronster Fujichaku Robbins),<br>for Respondent-Appellee-Appellant/<br> Cross-Appellee. | /s/ Keith K. Hiraoka<br>Associate Judge<br><br>/s/ Karen T. Nakasone<br>Associate Judge |

Chris Donahoe,
Deputy County Attorney,
Office of the County Attorney,
for Appellees-Appellees/
 Cross-Appellants.

Roy A. Vitousek III,
Mauna Kea Trask,
(Cades Schutte LLP),
for Petitioners-Appellants-
 Appellees/Cross-Appellees.

---

[11]    The Circuit Court additionally found that it has jurisdiction over Somer's administrative appeal pursuant to SMA Rule 15.0 and RPPPC 1-6-18(i). However, RPPPC Rule 1-6-18(i) is found in the section of the RPPPC that deals with appeals from agency hearings (contested cases), and likewise, SMA Rule 15.0 allows for "[a]ny party to the agency hearing pursuant [to] Chapter 6 of the [RPPPC]" to appeal.  Thus, because there has been no agency hearing for which an appeal is proper, RPPPC § 1-6-18(i) and SMA Rule 15.0 do not give Somers an additional basis to appeal the decision.